455 So.2d 72 (1984)
Ex parte Paul Edward MURRY
(In re Paul Edward Murry v. State of Alabama).
82-743.
Supreme Court of Alabama.
July 13, 1984.
Rehearing Denied August 24, 1984.
William W. Gobrecht, Montgomery, for petitioner.
*73 Charles A. Graddick, Atty. Gen., and Edward E. Carnes, Asst. Atty. Gen., for respondent.
PER CURIAM.
This is a death penalty case. The Court of Criminal Appeals affirmed petitioner's conviction for capital murder and sentence of death. Petitioner asserts that the capital offense of murder of a police officer requires knowledge of the officer's status and that a trial judge should not be allowed, under the sentencing provisions of the Alabama Criminal Code, to impose a sentence of death after a jury recommends life without parole.
Paul Edward Murry was indicted on February 5, 1982, the grand jury charging that he
"did intentionally cause the death of Mary Pearl McCord by shooting the said Mary Pearl McCord with a pistol while the said Mary Pearl McCord was on duty as a Police Officer for the City of Montgomery, Alabama or because of some official act or job-related act or performance of the said Mary Pearl McCord as a Police Officer for the City of Montgomery, Alabama, to-wit: because Mary Pearl McCord was attempting to arrest the said Paul Edward Murry ...."
Murry pleaded not guilty at his arraignment.
The case came to trial on May 17, 1982. On May 19 the jury pronounced Murry guilty of capital murder and reconvened immediately to deliberate on a sentence. The jury voted 11 to 1 to recommend life without parole. The trial judge conducted a presentence hearing on June 11 and entered a detailed sentence order on June 22, 1982, ordering that Murry be sentenced to death. The Court of Criminal Appeals affirmed the conviction and sentence, 455 So.2d 53 (Ala.Crim.App.1983), whereupon Murry petitioned this Court for a writ of certiorari to the Court of Criminal Appeals.
Murry states his first issue as follows: "whether the offense of the murder of a police officer who is in the performance of his duty requires proof of knowledge that the victim is in fact a police officer before the offense may be elevated to a capital one." Murry made statements immediately after the incident and at trial that he did not know the people he shot were police officers, but thought they were trying to rob him. The trial judge refused to charge the jury that the offense of capital murder of a police officer required the defendant to know that the victim was a police officer on duty.
The statute under which Murry was convicted and sentenced is the 1981 capital offense statute. 1981 Acts of Alabama, Act No. 81-178; Code 1975, §§ 13A-5-39 through -59 (1982 replacement volume). He was indicted under the following provision of § 13A-5-40:
"(a) The following are capital offenses:
"...
"(5) Murder of any police officer, sheriff, deputy, state trooper, federal law enforcement officer or any other state or federal peace officer of any kind, or prison or jail guard, while such officer or guard is on duty or because of some official or job-related act or performance of such officer or guard ...." [Emphasis added.]
This case squarely raises the issue of whether this statute requires that the accused know that the victim was a peace officer in order for the murder to be a capital offense.
Clearly, a murder "because of some official or job-related act" requires that the perpetrator know the victim is a peace officer and is or was performing an official act. A reading of § 13A-5-40 shows two similar offenses: murder of a public official which "stems from or is caused by or is related to [the victim's] official position, act, or capacity," § 13A-5-40(a)(11); and murder of a witness "when the murder stems from, is caused by, or is related to the capacity or role of the victim as a witness," § 13A-5-40(a)(14). The causal elements of these provisions require that the defendant have knowledge of the specified *74 status or act and intend to murder the victim because of the status or act.
To determine whether the clause "while such officer or guard is on duty" similarly requires an intent to murder with knowledge that the victim is an officer on duty, or at least a reckless disregard of facts which should inform the offender of the victim's status, we must examine the criminal code for an expression of legislative intent.
All of the capital offenses set out in § 13A-5-40(a) are murders. Section 13A-5-40(b) provides in part that "the terms `murder' and `murder by the defendant' as used in this section to define capital offenses mean murder as defined in section 13A-6-2(a)(1), but not as defined in section 13A-6-2(a)(2) and (3)." Section 13A-6-2(a)(1) states that a person commits the crime of murder if, "[w]ith intent to cause the death of another person, he causes the death of that person or of another person." Subdivision (2) pertains to recklessly engaging in conduct creating a grave risk of death, and subdivision (3) pertains to felony murder. Moreover, § 13A-6-2(b) provides in part that
"A person does not commit murder under subdivisions (a)(1) or (a)(2) of this section if he was moved to act by a sudden heat of passion caused by provocation recognized by law, and before there had been a reasonable time for the passion to cool and for reason to reassert itself."
A capital murder is therefore an intentional murder without legal provocation and including one of the elements of § 13A-5-40(a). The question before us is whether a mens rea in addition to the intent to murder, i.e., a culpable mental state regarding the status of a police officer on duty, is required in order for an intentional murder of a victim who is such an officer to sustain a capital conviction.
The Supreme Court of the United States, in Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed.2d 288 (1952), reversed Morissette's conviction for knowing conversion of United States property. The Court held that the trial court erred in refusing to submit the question of felonious intent to the jury. In the course of a thorough discussion of criminal intent and its place in the criminal law, the Court observed:
"Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil.9 As the states codified the common law of crimes, even if their enactments were silent on the subject, their courts assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation.
"9. Holmes, The Common Law, considers intent in the chapter on The Criminal Law, and earlier makes the pithy observation: `Even a dog distinguishes between being stumbled over and being kicked.' P. 3. Radin, Intent, Criminal, 8 Encyc.Soc.Sci. 126, 127, points out that in American law `mens rea is not so readily constituted from any wrongful act' as elsewhere."
Id., 342 U.S. at 251-252, 72 S.Ct. at 243-244. We turn to the Alabama Criminal Code to ascertain whether the legislature has created an offense without regard to criminal intent, as the State contends.
Section 13A-2-2 defines four culpable mental states: intent, knowledge, recklessness, and criminal negligence. Section 13A-2-3 reads:
"The minimum requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which he is physically capable of performing. If that conduct is all that is required for commission of a particular offense, or if an offense or some material element thereof does not require a culpable mental state on the part of the actor, the offense is one of `strict liability.' If a culpable mental state is required with respect to any material element of an offense, the offense is one of `mental culpability.'"
*75 The second and third sentences of this section contradict each other,[1] but it is clear that the question before us is whether capital murder of a police officer is a strict liability offense. This is so because the identity of the victim as a police officer is the only element distinguishing the capital offense from non-capital murder.
Section 13A-2-4 provides in part as follows:
"(a) When a statute defining an offense prescribes as an element thereof a specified culpable mental state, such mental state is presumed to apply to every element of the offense unless the context thereof indicates to the contrary.
"(b) Although no culpable mental state is expressly designated in a statute defining an offense, an appropriate culpable mental state may nevertheless be required for the commission of that offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, states a crime of mental culpability."
This statute supports the construction of § 13A-5-40(a)(5) advanced by Murry for three reasons: (1) paragraph (a) suggests that the "intentional" element of the murder applies to the element of the capital offense that the victim was a police officer on duty; (2) the first sentence of paragraph (b) pertains to the extent that the "proscribed conduct," murder punishable as a capital offense, "necessarily involves" a culpable mental state; and (3) the second sentence of paragraph (b) applies because § 13A-5-40(a)(5) says nothing "clearly indicating a legislative intent to impose strict liability," such as "whether or not the defendant knew that the victim was a police officer on duty or intended to kill the victim for that reason."
While the reasons we have listed as (1) and (3) in the previous paragraph are general rules of construction provided by the criminal code itself and tending to require a culpable mental state in addition to an intent to murder for a crime to be a capital offense rather than non-capital murder, reason (2) triggers an analysis more specific and more designed to resolve the issue on its merits. The question may be posed as, "Does a capital offense require a culpable mental state in addition to the intent to murder taken from the non-capital murder statute?"
The first approach is to survey the crimes deemed capital offenses in § 13A-5-40(a). The offenses numbered (1) through (4) and (8) prescribe capital offenses of "[m]urder by the defendant during [specified felonies] or an attempt thereof committed by the defendant." These offenses clearly require additional culpable mental states: the felonious intent to kidnap, rob, rape, etc.[2] Offense number (6) is murder while the defendant is under sentence of life imprisonment, and number (13) is murder by a defendant who has been convicted of murder within the previous 20 years. These two crimes address the recidivist or habitual offender, who is put on notice that he will be punished more harshly for subsequent offenses.
Offense number (7) is murder for profit or for hire, involving a particularly odious criminal intent. Offense number (9) includes murder during arson, similar to the first group of offenses above, and murder by means of explosives, an abnormally dangerous means which readily implies knowledge or at least recklessness on the part of the offender regarding the fact that he is at least potentially placing persons other *76 than the intended victim in unreasonable danger. Offense number (10) requires multiple intentional murders. Offenses (11) and (14) were mentioned above as requiring intent to murder officials and witnesses because of their capacity or acts. Finally, offense number (12) is murder during an aircraft hijacking, which requires the intent to exert unlawful control over the aircraft.
All of these offenses, in short, require an element in addition to murder of which the defendant must have at least knowledge, and in most cases an additional criminal intent. Under the trial court's refusal to instruct the jury that Murry had to know that the deceased was a police officer, Murry was convicted of capital murder with no more of a mens rea requirement than that of the intent to kill in the non-capital murder statute. Although controverted, Murry's testimony was that he did not know the two he shot were police officers, but thought they were attempting to rob him.
The statute as applied by the trial court cannot have the effect of protecting police officers. If the defendant does not know the victim is a police officer, how is the escalation of the murder of a police officer to a capital offense supposed to deter him?
The state argues that the issue here is one of proof: the only time this issue is likely to arise is when an undercover, plainclothes police officer is shot while on duty. In such situations, argues the state, the assailant is likely to be the only surviving witness, and will of course testify that he did not know the victim was a police officer. We cannot speculate that the legislature intended to create a unique strict liability capital offense on the basis of this reasoning, especially not in this case, where the surviving officer, Burks, contradicted Murry's testimony and said that both he and Officer McCord identified themselves as police.
The trial court submitted the questions of provocation, justification, and self-defense to the jury, so it might be said that the jury disbelieved Murry's claim that he did not know the victims were police officers. It is just as possible, however, that the jury found that legal provocation existed but Murry's use of deadly force was unwarranted or that his claim of self-defense could not stand because he did not retreat when he had the opportunity.
"[C]riminal statutes are to be strictly construed in favor of those persons sought to be subjected to their operation, i.e., defendants." Clements v. State, 370 So.2d 723, 725 (Ala.1979), citing Schenher v. State, 38 Ala.App. 573, 90 So.2d 234, cert. denied, 265 Ala. 700, 90 So.2d 238 (1956). We are bound to resolve the ambiguity regarding the peace officer offense in Murry's favor, especially in light of the rules of construction found in the criminal code militating against the creation of strict liability offenses by implication.
Our conclusion that the legislature did not intend to create a strict liability capital offense is bolstered by the fact that this would be such an extreme change from prior law. Under prior law, a homicide by one resisting an unlawful arrest could not be more than manslaughter, unless the resistance was in enormous disproportion to the threatened injury. Dodd v. State, 251 Ala. 130, 36 So.2d 474 (1948); Spooney v. State, 217 Ala. 219, 115 So. 308 (1928); Brown v. State, 109 Ala. 70, 20 So. 103 (1895); Catrett v. State, 31 Ala.App. 326, 16 So.2d 725, cert. denied, 245 Ala. 336, 16 So.2d 727 (1944); Shine v. State, 44 Ala. App. 171, 204 So.2d 817 (1967). Under these authorities, if the officer did not disclose his authority, the arrest was not lawful. If the legislature intended to create a capital offense for what might have been limited to manslaughter under traditional law, it should have been more explicit.
We are mindful that the legislature in 1967 passed an act creating the crime of assault with a deadly instrument upon a police officer in performance of his duties:
"Whenever any peace officer or other law enforcement officer of this state or any political subdivision of this state shall be engaged in the active discharge of his lawful duty or duties, it shall be unlawful for any person to commit any *77 assault with a deadly instrument upon such officer, and any person guilty of such assault with a deadly instrument shall be guilty of a felony, and upon conviction shall be imprisoned in the penitentiary for not less than two years nor more than twenty years."
1967 Ala. Acts p. 1600, Act No. 746, § 3; Code 1940 (Recomp. 1958, 1973 cum.supp.), t. 14, § 374(20).
In McKinney v. State, 50 Ala.App. 271, 274, 278 So.2d 719, 722 (1973), cert. den., 291 Ala. 789, 278 So.2d 724, cert. den., 414 U.S. 1027, 94 S.Ct. 456, 38 L.Ed.2d 320, the Court of Criminal Appeals held that
"[t]o read into this statute the additional elements of scienter, murderous intent, and the use of the instrumentality in such manner as to reflect an evil intent, is unwarranted. The statute falls in the class of malum prohibitum and not malum in se. It was enacted to protect a class of citizens engaged in ferreting out crime and in the enforcement of the criminal laws of the State and thereby for the ultimate protection of society."
Without reaching the discrepancy between the opinion in McKinney that officers are protected without a knowledge requirement and our observation above to the contrary, we decline to follow the holding in McKinney in a death penalty case. The statute at issue in that case increased the punishment for assault with a deadly instrument against a police officer without a mens rea requirement other than that required for the ordinary crime of assault with a deadly instrument, but the increase in punishment was qualitatively different from that involved herein. Under the criminal code's own presumptions against strict liability crimes, it would be a preposterous result to increase punishment, from a term of years or life with possibility of parole, to life without parole or the death penalty, with the sole difference being an element making no reference to the mental culpability of the defendant.
The United States Supreme Court, in Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), reversed the death sentence of an accomplice to a robbery who had no intent to kill, insisting that the focus must be on the defendant's culpability:
"American criminal law has long considered a defendant's intentionand therefore his moral guiltto be critical to `the degree of [his] criminal culpability,' and the Court has found criminal penalties to be unconstitutionally excessive in the absence of intentional wrongdoing.... The Court employed a similar approach in Godfrey v. Georgia, [446 U.S. 420, 433, 100 S.Ct. 1759, 1767, 64 L.Ed.2d 398] reversing a death sentence based on the existence of an aggravating circumstance because the defendant's crime did not reflect `a consciousness materially more "depraved" than that of any person guilty of murder.'"
Id., 102 S.Ct. at 3378 (citations omitted).
The Court in Enmund analyzed the felony murder statutes of the various states and concluded that "the current legislative judgment ... weighs on the side of rejecting capital punishment for the crime at issue." Id., 102 S.Ct. at 3374. We have similarly analyzed the death penalty provisions of the states which have death penalty statutes. Thirty-two states have "murder of a peace officer" offenses similar to the one at issue here.[3] Of these states, seventeen have statutes which require that the offender know, or in some cases "should know," the status of the peace officer, and fifteen are silent on the subject. (See Appendix.)
Of the states which make no specific requirement of knowledge of the status of the victim as a peace officer, only Missouri has specifically ruled that no such requirement *78 will be inferred. State v. Baker, 636 S.W.2d 902 (Mo.1982), cert. den., Baker v. Missouri, 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983). The denial of certiorari by the United States Supreme Court is at least some indication that that Court would not find the death penalty unconstitutional in a case such as the one before us, but it does not address the statutory construction issue to which we have referred above.
We decline to follow the reasoning of the Missouri Supreme Court whereby that court refused to interpret the statute to require that the accused know the victim to be a peace officer, basing its decision only on its conclusion that "[t]he evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that appellant knew Erson was a police officer." State v. Baker, supra, 636 S.W.2d at 907. Because the trier of fact was never asked to make a finding on the issue of knowledge, the possibility that such a finding would have been sustainable is irrelevant. Nor do we see the logic of holding that no finding of knowledge is required on the ground that such a finding could have been made in the case at bar. Moreover, the Missouri Supreme Court "decline[d] to address the unscrutable [sic] question of mens rea, [citing] Morrisette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); [and] Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968)." Id. The mens rea issue is the very heart of the case, especially under a statute such as we have here, where the only element differentiating the capital offense from non-capital murder is the identity of the victim.[4]
Of the fifteen states, not including Alabama, which have statutory provisions regarding murder of a peace officer but making no mention of the perpetrator's knowledge of the identity of the victim, thirteen include such provisions among the aggravating circumstances to be considered by the sentencer, not as elements of the offense of capital murder. Thus, the possibility of applying an element which makes no reference to criminal intent could only arise after the defendant has been convicted of a capital crime. Even assuming some of these states other than Missouri would refuse to infer a knowledge requirement,[5] the identity of the victim as an aggravating circumstance is only one of the circumstances to be considered in deciding whether the defendant is to be punished by life imprisonment without parole (in most cases) or by death. This is unlike the situation in Alabama, where the offense is necessarily raised from a non-capital one to a capital one without any distinct criminal intent.
For the reasons discussed above, we hold that the trial court erred in failing to instruct the jury in accordance with Murry's requested instructions that, in the event the jury found him guilty of murder, the murder could be raised to a capital offense only if Murry knew that the victim was a peace officer on duty. We note that the mens rea analysis above would allow an instruction that the offense could be raised to a capital one even if the State did not prove beyond a reasonable doubt that the defendant knew the victim was a peace officer, so long as the State proved a mentally culpable state regarding the victim's status, such as reckless disregard of facts which should put the offender on notice that the victim was a peace officer.[6] Without any such instruction, however, Murry has been convicted of a capital offense without proof of "a consciousness materially more `depraved' than that of any person *79 guilty of murder." Enmund v. Florida, supra. We cannot hold that the legislature intended to impose such a strict liability offense merely by implication.
Murry raises as a second issue the propriety of the trial court's decision to raise his sentence from the jury's recommendation of life without parole to a sentence of death. In view of our reversal of the judgment of conviction, we make no judgment whether such action was proper in this case. We do point out, however, that this Court recently affirmed such an increase in sentence in spite of a challenge on statutory construction and constitutional grounds. Ex parte Jones, 456 So.2d 380 (Ala.1984).
For the reasons stated, the judgment of the Court of Criminal Appeals is reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
MADDOX, FAULKNER and ADAMS, JJ., dissent.

APPENDIX
"CM" means the quoted material is part of the definition of murder punishable as a capital offense; "AC" means the quoted material is a statutory aggravating circumstance to be considered during the sentencing phase of a trial.
States With a Knowledge Requirement
Arkansas: "... with the premeditated and deliberated purpose of causing the death of any law enforcement officer ...." Ark.Stat.Ann. § 41-1501(1)(b) (1977). CM
California: "The victim was a peace officer... and such defendant knew or reasonably should have known that such victim was a peace officer engaged in the performance of his duties ...." Cal.Penal Code § 190.2(a)(7) (West Supp.1983). AC
Colorado: "He intentionally killed a person he knew to be a peace officer ...." Colo.Rev.Stat. § 16-11-103(6)(c) (1978). AC
Idaho: "Any murder of any peace officer... who was acting in the lawful discharge of an official duty, and was known or should have been known by the perpetrator of the murder to be an officer so acting...." Idaho Code § 18-4003 (1979). CM
Illinois: "... the defendant knew or should have known that the murdered individual was a peace officer ...." Ill.Rev. Stat. ch. 38, § 9-1(b)(1) (Supp.1982). CM
Louisiana: "When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties;" La.Rev.Stat.Ann. § 14.30(2) (West Supp.1983). CM
Mississippi: "... and with knowledge that the victim was a peace officer or fireman." Miss.Code Ann. § 97-3-19(2)(a) (Supp.1983). CM
Nevada: "... and the defendant knew or reasonably should have known that the victim was a peace officer or fireman." Nev. Rev.Stats. § 200.033(7) (1983). AC
New Hampshire: "... knowingly causes the death of: (a) A law enforcement officer acting in the line of duty;" N.H. Rev.Stat. Ann. § 630: 1(I.)(a) (1974). CM
New York: "... and the defendant knew or reasonably should have known that the victim was a police officer;" N.Y. Penal Law § 125.27(1)(a)(i) (McKinney 1975). CM
Ohio: "The victim of the offense was a peace officer ... whom the offender had reasonable cause to know or knew to be such ...." Ohio Rev.Code Ann. § 2929.04(A)(6) (Page 1982). AC
Tennessee: "... and the defendant knew or reasonably should have known that such victim was a peace officer ...." Tenn. Code Ann. § 39-2-203(i)(9) (1982). AC
Texas: "... and who the person knows is a peace officer or fireman;" Texas Penal Code § 19.03(a)(1) (Vernon 1974). CM
Utah: "... and the actor knew or reasonably should have known that the victim holds or has held that official position." *80 Utah Code Ann. § 76-5-202(1)(k) (Supp. 1983). CM
Vermont: "... any person known by the respondent to be a law enforcement officer...." Vt.Stat.Ann. tit. 13, § 2303(c) (Supp.1983). CM
Virginia: "The willful, deliberate and premeditated killing of a law-enforcement officer ... when such killing is for the purpose of interfering with the performance of his official duties ...." Va.Code § 18.2-31(f) (Supp.1983). CM
Washington: "... and the victim was known or reasonably should have been known by the person to be such at the time of the killing ...." Wash.Rev.Code § 10.95.020(1) (1983). CM
States Without a Knowledge Requirement
Connecticut: "Murder of [a law enforcement officer] while such victim was acting within the scope of his official duties ...." Conn.Gen.Stat. § 53a-54b(1) (1983). CM
Delaware: "He recklessly causes the death of a law-enforcement officer ... while such officer is in the lawful performance of his duties ...." Del.Code Ann. tit. 11, § 636(a)(4). CM
Georgia: "The offense of murder was committed against any peace officer ... while engaged in the performance of his official duties ...." Ga.Code § 17-10-30(b)(8) (1982). AC
Indiana: "The victim of the murder was a ... law enforcement officer, and either (i) the victim was acting in the course of duty or (ii) the murder was motivated by an act the victim performed while acting in the course of duty." Ind.Code Ann. § 35-50-2-9(b)(6) (Burns Supp.1983). AC
Kentucky: "The offender's act of killing was intentional and the victim was a ... police officer ... engaged at the time of the act in the lawful performance of his duties." Ky.Rev.Stat.Ann. § 532.025(2)(a)(7) (Bobbs-Merrill Supp.1982). AC
Maryland: "The victim was a law enforcement officer who was murdered while in the performance of his duties." Md. Ann.Code art. 27, § 413(d)(1) (1982). AC
Massachusetts: "[T]he murder was committed on a victim who was killed while serving in the performance of his official duties as one or more of the following: police officer ...." Mass.Ann.Laws ch. 279, § 69(a)(1) (Michie/Law.Co-op.Supp.1983). AC
Missouri: "The capital murder was committed against any peace officer, corrections employee, or fireman while engaged in the performance of his official duty...." Mo.Rev.Stat. § 565.012.2(8) (1978). AC
Montana: "The offense was deliberate homicide ... and the victim was a peace officer killed while performing his duty." Mont.Code Ann. § 46-18-303(6) (1983). AC
New Mexico: "[T]he victim was a peace officer who was acting in the lawful discharge of an official duty when he was murdered." N.M.Stat.Ann. § 31-20A-5(A). AC
North Carolina: "The capital felony was committed against a law-enforcement officer... while engaged in the performance of his official duties or because of the exercise of his official duty." N.C. Gen. Stat. § 15A-2000(e)(8) (Supp.1981). AC
Oklahoma: "The victim of the murder was a peace officer ... and such person was killed while in performance of official duty." Okla.Stat. tit. 21, § 701.12(8) (1981). AC
Pennsylvania: "The victim was a ... peace officer ... who was killed in the performance of his duties." 42 Pa.Cons. Stat.Ann. § 9711(d)(1) (Purdon 1982). AC
South Carolina: "The offense of murder was committed against any peace officer... while engaged in the performance of his official duties." S.C. Code Ann. § 16-3-20(C)(a)(7) (Law.Co-op.Supp.1983). AC
South Dakota: "The offense was committed against a law enforcement officer... while engaged in the performance of his official duties." S.D. Codified Laws Ann. § 23A-27A-1(7) (Supp.1983). AC
*81 MADDOX, Justice (dissenting).
I am of the opinion that the Court errs in holding that the § 13A-5-40(a)(5) capital offense requires the State to prove that the defendant knew the person he was murdering was a law enforcement officer on duty.
Applying principles of statutory construction, I conclude that the obvious purpose the legislature sought to obtain when it enacted § 13A-5-40(a)(5) was protection of law enforcement officers while in the performance of their duties.
Since the legislative intent behind § 13A-5-40(a)(5) is to protect law enforcement officers by providing severe punishment, even death, for anyone who murders an officer on duty, I am of the opinion that no knowledge requirement should be read into the law. The State should only be required to prove that a defendant intentionally killed a law enforcement officer while that officer was in the performance of his duty. To require more interferes with the protection of law enforcement officers which the legislature sought to provide.
We can take judicial knowledge of the fact that many police officers are killed while in the performance of their duties, and that many of these policemen perform their duties in plain clothes. The majority decision, which requires that the State prove beyond a reasonable doubt that the defendant knew at the time that his victim was a law enforcement officer, puts a burden on the State which the legislature did not impose and creates a problem of proof, especially in cases involving the murder of a policeman in plain clothes who is acting as an undercover officer. The only surviving witness to the situation that preceded the murder of a plain-clothes or undercover officer might be the murderer himself, who could always claim that he did not know he was murdering an officer. The officer would not be able to testify that he identified himself to the defendant, because the officer would be dead.
In the present case, there was a surviving eyewitness, Officer Burks, who did live to testify that he and Officer McCord had identified themselves to the defendant; however, that happened only because Officer Burks survived the gunshot wound the defendant inflicted on him. Had the defendant's aim been better, he would have murdered two officers and how could the State, under those circumstances, prove that the defendant knew the two persons he killed were police officers performing their duty? Here, the State may be able to meet the burden placed upon it, but what about all those cases where there are no witnesses to prove the knowledge of the defendant? I believe the legislature was aware of this problem and deliberately did not put a knowledge requirement in the statute. I recognize that criminal statutes should be narrowly construed, but a strict construction rule should not be substituted for "common sense, precedent, and legislative history." United States v. Standard Oil Co., 384 U.S. 224, 225, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966); accord, e.g., Barrett v. United States, 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976). That is why the rule of strict construction does not require that the more narrow of two possible meanings be ascribed to words in a criminal statute. E.g. United States v. Cook, 384 U.S. 257, 262-263, 86 S.Ct. 1412, 1414-15, 16 L.Ed.2d 516 (1966); United States v. Alvillar, 575 F.2d 1316, 1320 (10th Cir.1978).
The canon of strict construction is but one of many rules of statutory construction, and as this Court itself has noted, "[a]ll rules for construing statutes must be regarded as subservient to the end of determining legislative intent." State ex rel. Moore v. Strickland, 289 Ala. 488, 493, 268 So.2d 766, 770 (1972). The clear and obvious legislative intent behind § 13A-5-40(a)(5) is to protect all law enforcement officers by inflicting the supreme penalty on those who murder them while they are performing their duties. That intent can only be effectuated insofar as plain-clothes officers are concerned by not reading a status scienter requirement into the statute.
The United States Supreme Court has addressed a very similar issue concerning 18 U.S.C. § 111, the modern statute which prohibits obstructing or assaulting a federal officer. United States v. Feola, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), involved a conviction under that statute which grew out of an assault on drug purchasers who turned out to be undercover narcotics agents. It was undisputed that defendants were unaware that their victims were federal officers. 420 U.S. at 674-675, 95 S.Ct. at 1258-1259. The trial court charged the jury that status scienter was not required, and the court of appeals reversed on that ground. Id., at 675, 95 S.Ct. at 1259. After determining that the purpose of the statute was to *82 protect federal officers, the Supreme Court reinstated the convictions, holding:
"We conclude, from all this, that in order to effectuate the congressional purpose of according maximum protection to federal officers by making prosecution for assaults upon them cognizable in the federal courts, § 111 cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer. All the statute requires is an intent to assault, not an intent to assault a federal officer. A contrary conclusion would give insufficient protection to the agent enforcing an unpopular law, and none to the agent acting under cover.

"This interpretation poses no risk of unfairness to defendants. It is no snare for the unsuspecting. Although the perpetrator of a narcotics `rip-off,' such as the one involved here, may be surprised to find that his intended victim is a federal officer in civilian apparel, he nonetheless knows from the very outset that his planned course of conduct is wrongful. The situation is not one where legitimate conduct becomes unlawful solely because of the identity of the individual or agency affected. In a case of this kind the offender takes his victim as he finds him. ..."
420 U.S. at 684, 685, 95 S.Ct. at 1263, 1264 (emphasis added) (footnote omitted).
Likewise, § 13A-5-40(a)(5) does not involve legitimate conduct which becomes unlawful solely because of the identity of the individual affectedmurder is illegitimate conduct regardless of the victim's identity. I would hold that "the offender takes his victim as he finds him." Id., at 685, 95 S.Ct. at 1264. Consequently, I must respectfully dissent.
FAULKNER and ADAMS, JJ., concur.
NOTES
[1] Under the second sentence, if some material element does not require culpability, an offense is one of strict liability; under the third sentence, if any material element requires culpability, the offense is one of "mental culpability". The contradiction is illustrated by the offense at issue, where both intentional murder and status of the victim are material elements.
[2] See Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), in which the U.S. Supreme Court held that intent to rob will not support a felony-murder death sentence where the defendant was not present at the killing and had exhibited no intent to kill.
[3] The four other states with a death penalty statute have "resisting arrest" or "escaping custody" capital offenses, but we do not deem these to present the mens rea problem of the "murder of a peace officer" type of offense. Ariz.Rev.Stat. Ann. § 13-703 (Supp.1983); Fla.Stat.Ann. §§ 782.04, 921.141(5)(e) (West Supp.1983); Neb. Rev.Stat. § 29-2523(1)(g) (1979); Wyo.Stat. §§ 6-2-101(a), 6-2-102(h)(v) (Supp.1983).
[4] Under the Missouri statute, the identity of the victim is an aggravating circumstance. See Appendix.
[5] The Supreme Court of North Carolina has held that both a "murder of a peace officer" and a "resisting arrest" aggravating circumstance could be submitted to the jury, because the former "looks to the underlying factual basis of defendant's crime, the [latter] to defendant's subjective motivation for his act." State v. Hutchins, 303 N.C. 321, 279 S.E.2d 788, 809 (1981).
[6] Cf. the statutes in some states which require that the defendant "knew or reasonably should have known" the victim's status.