470 So.2d 1309 (1985)
Ex parte Ed HARRELL, Jr.
(Re: Ed Harrell, Jr. v. State).
83-1287.
Supreme Court of Alabama.
March 15, 1985.
Rehearing Denied May 10, 1985.
*1310 Jake V. Bivona of Paden, Green, Paden & Bivona, Bessemer, for petitioner.
*1311 Charles A. Graddick, Atty. Gen., and William D. Little, Asst. Atty. Gen., for respondent.
MADDOX, Justice.
This is a capital murder case in which the defendant has been sentenced to die.
It is undisputed that on October 1, 1981, Ed Harrell, Jr., shot and killed Tommy Lee Thedford. At the time of the shooting, Thedford was an on-duty police officer employed by the City of Bessemer. Harrell was indicted for capital murder pursuant to Code 1975, § 13A-5-40(a)(5). He initially entered a plea of not guilty by reason of insanity, but, after a psychiatric examination provided no evidence to support this defense, changed his plea to not guilty.
After hearing all testimony, the jury found Harrell guilty of murder, and, after considering aggravating and mitigating circumstances, pursuant to Code 1975, § 13A-5-46, rendered an advisory verdict recommending that Harrell be sentenced to life in prison without parole. After considering the jury's recommendation, all evidence presented at trial, all mitigating and aggravating circumstances, and a written pre-sentencing investigation report, prepared pursuant to Code 1975, § 13A-5-47(b), the trial judge refused to accept the jury's recommendation and sentenced Harrell to death by electrocution.
Harrell appealed to the Court of Criminal Appeals and that court affirmed his conviction. 470 So.2d 1303. He then petitioned here for certiorari, and raised several issues.
Harrell argues in his brief: (1) that Alabama's Death Penalty Act violates the prohibition against cruel and unusual punishment found in the eighth amendment to the United States Constitution; (2) that §§ 13A-5-46 and -47, which allow a jury to return an advisory verdict recommending that the defendant be sentenced to life without parole, but also allow the trial judge to "override" that sentence and impose the sentence he deems appropriate, is violative of the fifth, sixth, eighth, and fourteenth amendments to the United States Constitution; (3) that even if jury override is constitutional on its face, Alabama's standard for the application thereof is too vague and broad to pass constitutional muster; (4) that Code 1975, § 13A-5-40(a)(5), which makes the killing of an on-duty police officer a capital offense, is unconstitutionally arbitrary and vague, because it imposes greater punishment for the murder of a police officer than for the murder of someone else; (5) that because the trial judge was an elected official of Jefferson County, Bessemer Division, and the victim/police officer was an employee of the City of Bessemer, the judge's override of the jury's recommended sentence was the result of passion or prejudice; and (6) that the trial court erred in failing to find and consider the existence of certain non-statutory mitigating circumstances which supported the jury's recommended sentence.

I
During oral argument before this Court, Harrell raised, for the first time, the question of whether the trial judge should have instructed the jury that, in order to be found guilty of the capital offense, Harrell must have known at the time he fired the fatal shot that his victim was a police officer. Harrell argues that he is entitled to a new trial based upon this Court's majority opinion in Ex parte Murry, 455 So.2d 72 (Ala.1984), which was decided one day before Harrell filed his petition for certiorari in this case. In Murry, a majority of this Court held that the trial court erred in failing to give a requested jury instruction that, in the event the jury found the defendant guilty of murdering a police officer, the murder could be a capital offense, pursuant to § 13A-5-40(a)(5), only if the defendant knew at the time of the murder that the victim was an on-duty police officer. Murry, supra, at 78. It is undisputed that no similar instruction was given in the present case, but it is also undisputed that no such instruction was requested by Harrell. It is further undisputed that he did not object at trial to the *1312 court's failure to give such an instruction and that in the Court of Criminal Appeals he did not raise the issue he now raises before us.
During oral argument, Harrell's counsel argued that this Court must reverse the present conviction on the authority of Murry. The State, on the other hand, argued that the case sub judice is distinguishable from Murry, because here there was no request that the instruction in question be given and no objection raised when it was not given.
In this case, the trial court charged the jury on the elements of the capital offense, as follows:
"This indictment alleges that Ed Harrell, Jr., whose name to the Grand Jury is otherwise unknown, did on or about October 1st, 1981, did intentionally cause the death of Tommy Lee Thedford, by shooting him with a pistol, while the said Tommy Lee Thedford was on duty as a police officer of the City of Bessemer, Alabama, and in violation of the Code of Alabama. That is the capital offense.
"Before you would be authorized in finding this defendant guilty of that offense, you must find from the evidence beyond a reasonable doubt, that Ed Harrell, Jr., did on or about that day intentionally cause the death of Tommy Lee Thedford by shooting him with a pistol. And at the time of the shooting, Tommy Lee Thedford was on duty as a police officer of the City of Bessemer, Alabama. That is the capital offense charged in this indictment.
"The key word I would imagine in that charge is the word intent. It is the law of this state that a person acts intentionally with respect to a result or a conduct described by law when his purpose is to cause that result or engage in that conduct. In other words, in order to find the defendant guilty of the capital offense, you must find that he did intentionally, that is his purpose was to kill Tommy Lee Thedford, and at that time Officer Thedford was on duty as a police officer for the City of Bessemer. That is the capital offense."
At the conclusion of his charge, the court asked counsel if there were any exceptions, and defendant's counsel answered in the negative.
The controlling question is whether the failure of the trial judge to instruct the jury that they must find that the defendant knew his victim was a police officer was "plain error" which we "may" notice pursuant to the provisions of Rule 39(k), Ala. R.App.P., which provides, in part, as follows:
"In all cases in which the death penalty has been imposed, upon review of the opinion of the Court of Criminal Appeals on certiorari, the Supreme Court may notice any plain error or defect in the proceeding under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial rights of the petitioner."
To answer that question, we must first answer this question: What is "plain error" which this Court "may" notice, especially in matters involving instructions to juries in capital cases? That this Court may apply the "plain error" rule in capital cases to oral instructions to the jury was established in Jacobs v. State, 371 So.2d 448, 450 (Ala.1979) (Maddox, Faulkner, and Almon, JJ., dissenting on the ground the Court had applied the "plain error" doctrine "hypertechnically, erroneously, and contrary to its true intent"), wherein the majority stated:
"Our new plain error rule, Rule 39(k), ARAP, provides, viz.:
"`In all cases in which the death penalty has been imposed, upon review of the opinion of the Court of Criminal Appeals on certiorari, the Supreme Court may notice any plain error or defect in the proceeding under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, *1313 whenever such error has or probably has adversely affected the substantial rights of the petitioner. [Amended 10-2-78, eff. 12-1-78.]'
"Thus, in death penalty cases, the supreme court may notice plain error in the proceeding under review, whether or not brought to the trial court's attention. The new rule is broader than the old rule and includes oral instructions to the jury."
In answering the question of what constitutes "plain error," we look to the Federal Rules of Criminal Procedure, which define "harmless error" and "plain error" as follows:
"Rule 52. Harmless Error and Plain Error.

"(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.
"(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
In 8B Moore's Federal Practice, ¶ 52.02[2] (2d ed. 1984), it is stated:
"The provision which permits the court to notice `plain error' not raised at the trial is a restatement of pre-Rules decisional law. What is the meaning of `plain error' as used in Subdivision (b)? The language of the Rule speaks of `plain error' and `defects affecting substantial rights' in the disjunctive. But if error which is `plain' does not also `affect substantial rights' there would not be much point to Subdivision (b). Then the only consequence of finding a `plain' error would be that the court could `notice' it but not make it a basis for reversal. Obviously, `plain error' was intended to apply to errors of substance." (Footnotes omitted.)
This Court has previously considered a capital case in which it applied the "plain error" rule to an instruction to the jury. In Ex parte Womack, 435 So.2d 766 (Ala. 1983), Justice Beatty, writing for the Court, and with all Justices concurring, opined as follows:
"Petitioner made no objection as to the content of this charge; instead he merely asked for an instruction to the effect that the length of the charge did not reflect the wishes of the court. The court gave such a requested charge. Petitioner announced satisfied.
"The problem is reduced to whether it was plain error under Rule 39(k), A.R. A.P., for the trial court not to instruct that `assistance' required the other participant's (the principal's) knowledge that the defendant intended to render assistance if necessary.
"The State argues that this was not `plain error' because the petitioner himself never indicated any reliance on such a defense; that is, instead of defending on the basis that he had no intent to kill but only to rob, his defense was alibi; he denied being present and denied any knowledge of the crime. Consequently, the State argues, and we agree, that the failure to charge the matter referred to above was not a `particularly egregious error' and would not result in a miscarriage of justice if a reversal was denied. That position follows United States v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982), and the federal `plain error' rule as stated in United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir.1981): `"Plain error" only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings.' In that case the court found no `plain error' in an evidentiary ruling after the defendants had failed during trial to assert a theory later argued on appeal. See also Rule 45A, A.R.A.P."
In Bush v. State, 431 So.2d 563 (Ala. 1983), Jones, J., writing for the full Court, opined:
"In conclusion, we emphasize that Defendant's failure to raise the error of citation issue, while weighing against Defendant as to any possible claim of prejudice, serves as no impediment to *1314 our scope of review pursuant to the `plain error' mandate in death penalty cases. Accordingly, we find no irregularity nor impropriety in either the trial proper or in the sentencing procedure `adversely affecting the right of the defendant.' § 13A-5-53." 431 So.2d at 565. (Emphasis added.)
In view of these definitions of "plain error" and the application of the rule in other capital cases decided by this Court, we now answer the critical question, whether we should apply the "plain error" rule in this case. We think not, for at least two reasons: (1) The trial court's instruction follows the pattern jury instruction "recommended" by this Court for capital offenses involving murder of a policeman, and (2) the defendant's defense was substantially based upon the claim that the killing was accidental, the defendant raised no objection to the instruction to the jury, and he did not request the court to instruct the jury on the element of knowledge; therefore, this case is distinguishable from Murry.
First, the instruction given by the trial court follows substantially a pattern jury instruction this Court "recommended" be given when a defendant is charged with the intentional killing of a police officer. On December 6, 1982, this Court entered the following order:

ORDER
"This Court requested, by its Resolution dated June 3, 1981, the Alabama Bar Institute for Continuing Legal Education to prepare pattern jury instructions for the trial and sentencing aspect of cases tried under § 13A-5-40(a), Code of Alabama, 1975.
"The Alabama Bar Institute for Continuing Legal Education has recommended proposed pattern jury instructions for use in the guilt stage of capital cases tried under § 13A-5-40(a), Code of Alabama, 1975, attached hereto as Appendix `A'.
"The Court acknowledges with appreciation the painstaking care, scholarly research and attention to detail and many hours of work and study which went into the drafting of these pattern jury instructions.
"While these pattern jury instructions appear to be accurate and appropriate to the subjects to which they relate, they are to be considered as patterns only and should be altered or changed as circumstances indicate. Accordingly,
"IT IS ORDERED by the Court:
"That the use of the pattern jury instructions, attached hereto as Appendix `A', for the trial and sentencing aspect of cases tried under § 13A-5-40(a), Code of Alabama, 1975, is recommended, but without prejudice to the right of any defendant to make and preserve for review in a timely manner any objection thereto either as to form, substance or application." (Emphasis added.)
The pattern jury instruction attached to this Court's order for cases involving the intentional killing of a police officer reads as follows:
"MURDER OF OFFICER OR GUARD
[Section 13A-5-40(a)(5)]
"[READ INDICTMENT]
"If you are convinced beyond a reasonable doubt that the defendant committed the crime of murder of the intentional killing type of (Name of deceased), who was a (police officer) (or) (sheriff,) (deputy,) (state trooper,) (federal law enforcement officer,) (or any other state or federal peace officer of any kind,) (or prison or jail guard) while such officer or guard was on duty[1] (or because of some official or job-related act or performance of such officer or guard) as alleged in the indictment, then it would be your duty to find the defendant guilty of the capital offense.
"The three components of this capital offense are: (1) that the defendant intentionally murdered another; (2) that the person murdered was a (police officer) *1315 (or) (sheriff,) (deputy,) (state trooper,) (federal law enforcement officer,) (or any other state or federal peace officer of any kind,) (or prison or jail guard); and (3) that such murder of the intentional killing type occurred while such officer (or guard) was on duty (or because of some official or job-related act or performance of such officer or guard).
"A defendant commits murder of the intentional killing type if with the intent to cause the death of another person, he causes the death of that person or of another person. A person acts intentionally with respect to a result or to conduct when his purpose is to cause that result or to engage in that conduct. The defendant must intentionally, as opposed to negligently, accidentally or recklessly, cause the death of the deceased in order to invoke the capital statute. The intent to kill must be real and specific in order to invoke the capital statute.
"[If the evidence justifies it, at this point, insert an appropriate complicity instruction. See example on page 2.]
"In this case, if you are convinced by the evidence beyond a reasonable doubt that the defendant committed the crime of murder of the intentional killing type of (Name of deceased) by the means alleged in the indictment; that the person murdered was a (police officer) (or) (sheriff,) (deputy,) (state trooper,) (federal law enforcement officer,) (or any other state or federal peace officer of any kind,) (or prison or jail guard); and that such murder of the intentional killing type occurred while such officer (or guard) was on duty (or because of some official or job related act or performance of such officer or guard), then all components of this offense would have been proven, and it would be your duty to find the defendant guilty of the capital offense charged in the indictment.
"On the other hand, if you are not convinced by the evidence beyond a reasonable doubt that the defendant committed the crime of murder of the intentional killing type of (Name of deceased) by the means alleged in the indictment; or if you are not convinced by the evidence beyond a reasonable doubt that the deceased was a (police officer) (or) (sheriff,) (deputy,) (state trooper,) (federal law enforcement officer,) (or any other state or federal peace officer of any kind,) (or prison or jail guard); or if you are not convinced by the evidence beyond a reasonable doubt that the murder of the intentional killing type committed by the defendant, occurred while such officer or guard was on duty (or because of some official or job-related act of such officer or guard), then the defendant cannot be convicted of the capital offense charged in the indictment. (Emphasis added.)
"[Insert lesser included offense instructions, if any, at this point. See page 5.]"
Even though we are not bound by the order we entered, we do not think we should hold that the trial judge plainly erred when he instructed the jury pursuant to a pattern jury instruction "recommended" by this Court, especially in the absence of an objection or request from the defendant.
Second, because the defendant's primary defense was that the killing was accidental, and because he neither objected to the instruction given by the court nor requested an instruction on the "knowledge" question, we think Murry, heavily relied upon by the defendant, is distinguishable. In Murry, a majority of this Court, did determine that, if requested to do so, the trial court should give an instruction that the defendant must have known that the victim was a police officer, but in Murry the defense was based upon the theory that Murry thought the police officers were trying to rob him, and, further, the defense was based substantially on his contention that he did not know that the victim was a police officer.
In this case, the defense was based substantially upon the defendant's claim that the defendant accidentally shot the police officer. On the question of whether the defendant knew the victim was a police *1316 officer, there was substantial testimony that he did, in fact, know his victim was a police officer.
In fact, on direct examination, Harrell gave the following account of Thedford's shooting:
"A So, after we were talking and I wasI had his number. I was supposed to leave there. A car pulled up.
"Q Okay.
"A A green car.
"Q Okay.
"A A black man got out. He didn't threaten me. He didn't do anything to hurt me. `What is the trouble?' I said, `There is no trouble.' `Anything I can do for you?' I said, `No.' I didn't know what to expect.
"Q Okay. Tell us what happened, Mr. Harrell?
"A And he asked was I with Donnie Ray and I said yes. He said, `Where did he go?' I said, `Down the street running.' He said, `I wanted to see him.' That was all he said. He said, `Come here, I want to talk to you.' He pulled me around the corner. We was talking. He asked me was I sick. I said, `Yeah, I'm sick.' He said, `I can get you in the hospital.' I said, `No, I don't want to go in the hospital.' I knew who he was. I knew who he was.
"So, after he kept on talking we talked, we talked. No violence between neither one of us this night. I felt something was wrong, that he had set me up or something. I made an attempt to run. But, he said, `Baby, don't run. Don't run, baby. I'm not going to hurt you.'
"I didn't know what he meant by that you know. And I stopped about 5 or 10 feet from him. And he said, `You have a gun, don't you?' I said, `Yeah, do you want it? You can have the gun.' And he said, `I'm not going to hurt you, brother. I'm not going to hurt you.'
"Q Okay.
"A He said, `Give it to me.' After I did run, because I did run, the gun fell down by my knees. And I told him where the gun was. I was nervous and too scared to bend over because he kept making a motion at his side. I didn't know if he had a gun or not. I didn't take no chances.
"So, he said, `Go ahead and get it.' I reached in five or six times. Every time I got ahold of it I turned it aloose. I would get ahold of it again and drop it again down my pantsfurther down. It dropped to my ankles. I kept getting it. And when I got it in my hands, I had my hands shaking. I said, `Don't shoot me. Please, don't hurt me.' I said, `Please, don't shoot me.' He said, `Baby, I'm not going to shoot you. Brother, I'm not going to hurt you.' I had the gun. He was standing on a lower level and I was standing in the middle, the highway.
"Now, this was a side'You're going to shoot me.' I was so scared. I don't know how much pressure I had on the gun but I was scared. I don't know if it was cocked. I don't know. I went to throw the gun to him and it went off. I don't know what happened then. He grabbed his face and said, `It went off. It went off.'"
Unlike the defense in Murry, where the defendant claimed that he reasonably believed that the deceased officer and her partner were attempting to rob him, that the officers failed to identify themselves (thereby failing to eliminate his apprehension of being robbed), and that he would not have shot them had they identified themselves as police officers, Harrell's defense was based solely upon his claim that the gun which killed Thedford accidentally discharged. Therefore, Harrell's knowledge, or lack thereof, of Thedford's identity was not a material element of his defense.
Furthermore, there is substantially more evidence in the present case than was introduced in Murry indicating that the defendant did know that his victim was a police officer. Unlike Murry, in which the only witnesses to the shooting were the defendant, who testified that the officers failed to identify themselves, and the deceased officer's partner, who testified that they did identify themselves, here, there was testimony *1317 from two disinterested witnesses that Thedford identified himself as a policeman just prior to being shot by Harrell.
There is also testimony elicited from Harrell himself indicating that he knew Thedford's identity. Harrell's testimony that, "I knew who he was. I knew who he was" and "I felt something was wrong, that he had set me up or something" can only be interpreted as showing, or at least creating a reasonable inference, that Harrell knew, prior to the shooting, that Thedford was a police officer. Although Harrell subsequently testified that he did not know that Thedford was a policeman until after he shot him (see dissenting opinion of Jones, J.), he, nevertheless, admitted on cross-examination that he had given another police officer a statement to the effect that "he [Thedford] had told me he was a police officer, and he was going to take me down to the city and question me."
Based on the foregoing, we hold, as we did in Womack, supra, that "the failure to charge the matter referred to ... was not a `particularly egregious error' and would not result in a miscarriage of justice if a reversal is denied." We need not decide when, and under what circumstances, the failure of the trial court to instruct the jury in a different factual context might constitute "plain error." We only hold that under the present facts, it did not.

II
Defendant's claim that the penalty of death is cruel and unusual is unfounded. The United States Supreme Court has held that the penalty of death, if constitutionally applied, does not constitute cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

III
Similarly, judicial override of jury verdicts has been upheld. In Spaziano v. Florida, ___ U.S. ___, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), the United States Supreme Court ruled that the capital sentencing scheme employed by the State of Florida did not violate Spaziano's constitutional rights. Alabama's procedure permitting judicial override is almost identical to the scheme used in Florida. In Spaziano, as here, the defendant argued that, because all but three states make the jury's sentence binding, there is nearly unanimous recognition that juries, not judges, are best equipped to make reliable capital-sentencing decisions. Like Harrell, the defendant in Spaziano also argued that since imposition of the death penalty is an expression of community outrage, the jury, which serves as the voice of the community, is in the best position to decide whether a particular crime is so heinous that the community's response must be death. Spaziano, ___ U.S. at ___, 104 S.Ct. at 3163. The Supreme Court, however, held that merely because a majority of the states make the jury's sentence final, the eighth amendment is not violated when a state chooses not to follow the majority but to allow instead for jury override. The Court concluded that there is not any one right way for a state to set up its capital sentencing scheme, that imposing the sentence in individual cases is not the sole or even primary vehicle through which the community expresses itself, and that placing final sentencing responsibility on a trial judge is not so fundamentally at odds with contemporary standards of fairness and decency as to be unconstitutional. Spaziano, ___ U.S. at ___, 104 S.Ct. at 3164, 3165. We follow Spaziano and hold Alabama's override provision constitutional. See also Murry v. State, 455 So.2d 53, 65 (Ala.Crim.App. 1983), reversed on other grounds, Ex parte Murry, supra.

IV
This Court also finds no constitutional infirmity in § 13A-5-40(a)(5) simply because it makes the murder of an on-duty police officer a capital offense. As the Court of Criminal Appeals stated in Murry v. State, supra:
"Certainly, the legislature enacted this provision in contemplation of the societal gravity associated with the killing of law *1318 enforcement personnel, and to provide an enhanced deterrent against these killings and to give to law enforcement officers a protection greater than the law of homicide provides to private citizens. United States v. Feola, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975).
"Police officers risk their lives each day in the noble interest of protecting society and legislatures realize that these persons should be afforded protection commensurate with their responsibilities."
We find § 13A-5-40(a)(5), as interpreted by this Court in Murry, to be a reasonable exercise of legislative authority which is neither arbitrary nor capricious in imposing capital punishment upon one who intentionally and knowingly takes the life of a police officer, while that officer is engaged in carrying out his appointed duties, protecting the health, welfare, and property of the citizens he serves. There is absolutely no authority to support Harrell's claim that conviction under § 13A-5-40(a)(5) denied him equal protection of the law.

V
Similarly, we find no support for Harrell's contention that the trial judge's override of the jury's sentence resulted from passion or prejudice. His assertion that, because the trial judge is an elected official and the victim was a police officer, the judge's override was per se the result of prejudice is unacceptable. It is presumed that a public official charged with a duty will perform that duty. Black v. Wilson, 281 Ala. 6, 198 So.2d 286 (1967). Furthermore, it is presumed that a trial judge will follow his own instructions. Ex parte Thomas, 460 So.2d 216 (Ala.1984), citing Harris v. Rivera, 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981). Upon our review of the record in this case, we find that the trial judge gave the following instruction to the jury:
"I will instruct you that your decision should not be controlled by prejudice or passion or any other arbitrary factor. And it is your solemn duty to avoid the entrance of such factors in reaching this decision."
Seeing no evidence to convince us otherwise, we presume that the trial judge followed these instructions and properly performed his duty to impose a just sentence. As the Court of Criminal Appeals stated:
"There is no evidence ... that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor."

VI
Finally, the trial judge did not err by refusing to consider as mitigating factors Harrell's testimony that officer Thedford's death was an accident, for which he was sorry, or his cooperation with authorities in locating the murder weapon. Any claim that the shooting was an accident was, of course, rejected by the jury's guilty verdict. While Harrell's alleged remorse and apparent cooperation possibly could have been considered as non-statutory mitigating circumstances, pursuant to Code 1975, § 13A-5-52, whether to consider them as such was within the discretion of the trial judge. Cochran v. State, [MS. April 24, 1984] ___ So.2d ___ (Ala.Crim. App.1984), cert. granted (Ala., July 24, 1984). Upon considering the totality of the evidence presented against Harrell, including evidence of a prior conviction for second degree murder, a prior conviction for assault with intent to rob, and eyewitness testimony that he was seen running from the scene of Thedford's murder "clapping his hands with a big smile on his face," we believe the trial judge could have properly discounted Harrell's alleged remorse and his cooperation as not being truly mitigating. Therefore, we cannot say that the trial judge erred in this regard.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EMBRY, BEATTY and ADAMS, JJ., concur.
JONES, ALMON and SHORES, JJ., concur in part and dissent in part.
*1319 JONES, Justice (Concurring in part and dissenting in part).
I concur in every aspect of the opinion except one: Whether the failure to give a jury instruction pursuant to our holding in Ex parte Murry, 455 So.2d 72 (Ala.1984), was "plain error." Whether Harrell was entitled to the Murry charge (i.e., the charge that in order to convict of capital murder the jury must find that Harrell knew that his victim was a police officer) is addressed by the majority opinion in two separate aspects: 1) "... there was substantial testimony that he did, in fact, know his victim was a police officer"; and 2) that the application of the "plain error" doctrine, Rule 39(k), A.R.A.P., is a matter of discretion, and that the term "may notice any plain error or defect" indicates that the court has an option in determining whether a particular error is "plain error" in any particular case.
The statement from the majority opinion quoted above with respect to the evidence is in the nature of a statement testing the sufficiency of the evidence and not in the nature of an analysis of the totality of the evidence to determine whether a fact issue was made for the jury's determination as to whether Harrell knew, at the time he shot the victim, that he was a police officer. Indeed, "there was substantial testimony [that Harrell knew] his victim was a police officer." But there was also evidence that at the time he shot the victim he did not know he was a police officer. I quote directly from the record:
"Q What did you do after [the shot was fired]?
"....
"A ... During that time it was getting dark. So, I met another man and I had about $13 in my pocket. I said, `Would you take me to police headquarters.' He said, `Are you the one that shot the police.' I said, `I don't know nothing about no police. I want to go turn myself in.' He said, `I won't have anything to do with it.'
"As I was walking, I came up to Scott's Service Station there and pulled him over to the side and asked him would he carry me to the city and he said, `For what?' I said, `A man has been shot.' He said, `Did you kill that police?' I said, `No, man, I don't know who he was.'"
"....
"Q And that is when you all started talking?
"A That's right. He was a very nice guy. He didn't say he was a police. He said he was going to help me.
"....
"Q You didn't have anything to explain to this man, he wasn't a policeman according to your testimony.
"A I didn't know who he was.
"....
"Q You said you were going to call when Officer Thedford gave you a dime, you was going to call the police. Is that what you said?
"A I intended to.
"....
"Q Did you call the police twice?
"A I called the City Police twice. She asked did I want the county or the city. I told her I wanted the city.
"Q What was the occasion for calling the police? Why did you call the police station?
"A I didn't know who he was.
"Q You didn't know who Officer Thedford was?
"A No, sir.
"....
"Q And even after you got some money, you never tried to call the police again?
"A After I had learned he was a police, officer got shot, I said, `Oh, my God,' and I'm trying to work my way to the police department."
It is a familiar rule of law that where a conflicting inference may be reasonably drawn, even from a single witness's testimony, a fact issue is raised which must be submitted for the jury's determination. Dean v. Mayes, 274 Ala. 88, 145 So.2d 439 (1962). For the majority opinion to cite *1320 only part of the evidence, when the totality of the evidence is sufficient to raise a factual inference that Harrell did not know his victim was a police officer until after he was shot, is to do injustice to this well-established, longstanding rule of evidence; and, to misapply the rule in the context of a death penalty case, in my opinion, is unthinkable. The majority seems to forget that we are not here evaluating the weight of the evidence as against a motion to exclude. Rather, we are dealing with whether Harrell was entitled to a jury instruction as to the Defendant's knowledge that his victim was a police officeran essential element of the State's case.
Curiously enough, however, the majority opinion does not ground its affirmance solely on Harrell's not being entitled to the Murry instruction, for it devotes considerable attention to the "plain error" doctrine incorporated in A.R.A.P. 39(k). If all of the evidence of record was to the effect that Harrell knew his victim was a police officer at the time he shot him, then there could be no error in omitting the Murry charge. The amount of space in the majority opinion devoted to the "plain error" doctrine is totally inconsistent with its analysis of the evidence on this point.
The opinion's discussion of "plain error" effectively acknowledges that, under the facts of the case, the trial court's judgment would be reversed if Defendant's counsel had requested the Murry charge (i.e., if counsel had requested an instruction that Harrell, to be guilty of the capital offense, must have known at the time he fired the fatal shot that his victim was a police officer). The opinion further acknowledges that A.R.A.P. 39(k) makes an exception to the general preservation of error rule in death penalty cases ("the supreme court may notice any plain error or defect ... whether or not brought to the attention of the trial court").[1] Then, without explanation, the Court summarily declares that "We only hold that under the present facts, it was not [`plain error']."
It is apparent that I have an understanding of the "plain error" doctrine of Rule 39(k) totally different from that expressed in the Court's opinion. According to my understanding, the sum and substance of its philosophy, applicable only in death penalty cases, is to avoid the very thing that is happening here. Murry gets a new trial because the trial court failed to give the requested instructions; but Harrell, whose lawyer failed to request the charge, or otherwise object, goes to the electric chair, although the evidence in each case was sufficient to create a factual inference that the defendant did not know that his victim was a police officer.
The "plain error" doctrine is simple, both in its theory and in its application. The appellate court will search the record in a death penalty case and notice any error (ruling or omission) of the trial court, "whenever such error has or probably has adversely affected" a substantial right of the defendant, in the same manner as if defendant's counsel had preserved and raised such error for appellate review. When all the elements of prejudicial error are present, and, as in this case, the Court predicates its holding on defense counsel's failure to object, we are left to speculate as to this Court's definition of "plain error." Maybe the Court is now opting for the writ of error coram nobis (or a federal habeas corpus) ground of incompetent counsel as the appropriate remedyan alternative that was rejected by the Court when it adopted the "plain error" doctrine; or, if the Court does not intend to abolish the "plain error" provision of Rule 39(k), does it intend to determine "plain error" on a case-by-case basis? If it does, then sadly but surely, we have reverted to pre-Furman constitutional application of the death penalty statute. See Furman v. Georgia, *1321 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
Moreover, we are not writing on a clean slate. A unanimous court in Bush v. State, 431 So.2d 563 (Ala.1983), observed:
"In conclusion, we emphasize that Defendant's failure to raise the error of citation issue, while weighing against Defendant as to any possible claim of prejudice, serves as no impediment to our scope of review pursuant to the `plain error' mandate in death penalty cases. Accordingly, we find no irregularity nor impropriety in either the trial proper or in the sentencing procedure `adversely affecting the right of the defendant.' § 13A-5-53." 431 So.2d at 565.
The qualifying language (with respect to the defendant's increased burden to show prejudice) has no restrictive effect here, because prejudicial error is the explicit holding of Murry. In other words, the majority opinion, without expressly overruling either case, chooses to ignore the combined precedent of Bush (holding that failure to preserve error in a death penalty case does not encumber appellate review) and Murry (holding that, where warranted by the evidence, failure to instruct the jury as to defendant's knowledge that the victim was a police officer was reversible error).
ALMON and SHORES, JJ., concur.
NOTES
[1] See Robinson v. State, 361 So.2d 1109 (Ala. Crim.App.1977).
[1] The majority opinion's emphasis on the word "may," as giving this Court an option (thus interpreting "may" to mean "may or may not" rather than "can"), is clearly misplaced. Moreover, the rule applicable to the Court of Criminal Appeals (A.R.A.P. 45A) is "shall notice any plain error"; and this Court's review of the Court of Criminal Appeals' opinion is in the context of Rule 45A's mandate.