I concur in every aspect of the opinion except one: Whether the failure to give a jury instruction pursuant to our holding in Ex parte Murry, 455 So.2d 72 (Ala. 1984), was "plain error." Whether Harrell was entitled to the Murry charge (i.e., the charge that in order to convict of capital murder the jury must find that Harrell knew that his victim was a police officer) is addressed by the majority opinion in two separate aspects: 1) ". . . there was substantial testimony that he did, in fact, know his victim was a police officer"; and 2) that the application of the "plain error" doctrine, Rule 39 (k), A.R.A.P., is a matter of discretion, and that the term "may notice any plain error or defect" indicates that the court has an option in determining whether a particular error is "plain error" in any particular case.
The statement from the majority opinion quoted above with respect to the evidence is in the nature of a statement testing the sufficiency of the evidence and not in the nature of an analysis of the totality of the evidence to determine whether a fact issue was made for the jury's determination as to whether Harrell knew, at the time he shot the victim, that he was a police officer. Indeed, "there was substantial testimony [that Harrell knew] his victim was a police officer." But there was also evidence that at the time he shot the victim he did not know he was a police officer. I quote directly from the record:
"Q What did you do after [the shot was fired]?
". . . .
 "A . . . During that time it was getting dark. So, I met another man and I had about $13 in my pocket. I said, `Would you take me to police headquarters.' He said, `Are you the one that shot the police.' I said, `I don't know nothing about no police. I want to go turn myself in.' He said, `I won't have anything to do with it.'
 "As I was walking, I came up to Scott's Service Station there and pulled him over to the side and asked him would he carry me to the city and he said, `For what?' I said, `A man has been shot.' He said, `Did you kill that police?' I said, `No, man, I don't know who he was.'"
". . . .
"Q And that is when you all started talking?
 "A That's right. He was a very nice guy. He didn't say he was a police. He said he was going to help me.
". . . .
 "Q You didn't have anything to explain to this man, he wasn't a policeman according to your testimony.
"A I didn't know who he was.
". . . .
 "Q You said you were going to call when Officer Thedford gave you a dime, you was going to call the police. Is that what you said?
"A I intended to.
". . . .
"Q Did you call the police twice?
 "A I called the City Police twice. She asked did I want the county or the city. I told her I wanted the city.
 "Q What was the occasion for calling the police? Why did you call the police station?
"A I didn't know who he was.
"Q You didn't know who Officer Thedford was?
"A No, sir.
". . . .
 "Q And even after you got some money, you never tried to call the police again?
 "A After I had learned he was a police, officer got shot, I said, `Oh, my God,' and I'm trying to work my way to the police department."
It is a familiar rule of law that where a conflicting inference may be reasonably drawn, even from a single witness's testimony, a fact issue is raised which must be submitted for the jury's determination. Dean v. Mayes, 274 Ala. 88,145 So.2d 439 (1962). For the majority opinion to cite *Page 1320 
only part of the evidence, when the totality of the evidence is sufficient to raise a factual inference that Harrell did not know his victim was a police officer until after he was shot, is to do injustice to this well-established, longstanding rule of evidence; and, to misapply the rule in the context of a death penalty case, in my opinion, is unthinkable. The majority seems to forget that we are not here evaluating the weight of the evidence as against a motion to exclude. Rather, we are dealing with whether Harrell was entitled to a jury instruction as to the Defendant's knowledge that his victim was a police officer — an essential element of the State's case.
Curiously enough, however, the majority opinion does not ground its affirmance solely on Harrell's not being entitled to the Murry instruction, for it devotes considerable attention to the "plain error" doctrine incorporated in A.R.A.P. 39 (k). If all of the evidence of record was to the effect that Harrell knew his victim was a police officer at the time he shot him, then there could be no error in omitting the Murry charge. The amount of space in the majority opinion devoted to the "plain error" doctrine is totally inconsistent with its analysis of the evidence on this point.
The opinion's discussion of "plain error" effectively acknowledges that, under the facts of the case, the trial court's judgment would be reversed if Defendant's counsel had requested the Murry charge (i.e., if counsel had requested an instruction that Harrell, to be guilty of the capital offense, must have known at the time he fired the fatal shot that his victim was a police officer). The opinion further acknowledges that A.R.A.P. 39 (k) makes an exception to the general preservation of error rule in death penalty cases ("the supreme court may notice any plain error or defect . . . whether or not brought to the attention of the trial court").[1] Then, without explanation, the Court summarily declares that "We only hold that under the present facts, it was not [`plain error']."
It is apparent that I have an understanding of the "plain error" doctrine of Rule 39 (k) totally different from that expressed in the Court's opinion. According to my understanding, the sum and substance of its philosophy, applicable only in death penalty cases, is to avoid the very thing that is happening here. Murry gets a new trial because the trial court failed to give the requested instructions; but Harrell, whose lawyer failed to request the charge, or otherwise object, goes to the electric chair, although the evidence in each case was sufficient to create a factual inference that the defendant did not know that his victim was a police officer.
The "plain error" doctrine is simple, both in its theory and in its application. The appellate court will search the record in a death penalty case and notice any error (ruling or omission) of the trial court, "whenever such error has or probably has adversely affected" a substantial right of the defendant, in the same manner as if defendant's counsel had preserved and raised such error for appellate review. When all the elements of prejudicial error are present, and, as in this case, the Court predicates its holding on defense counsel's failure to object, we are left to speculate as to this Court's definition of "plain error." Maybe the Court is now opting for the writ of error coram nobis (or a federal habeas corpus)
ground of incompetent counsel as the appropriate remedy — an alternative that was rejected by the Court when it adopted the "plain error" doctrine; or, if the Court does not intend to abolish the "plain error" provision of Rule 39 (k), does it intend to determine "plain error" on a case-by-case basis? If it does, then sadly but surely, we have reverted to pre-Furman
constitutional application of the death penalty statute. SeeFurman v. Georgia, *Page 1321 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
Moreover, we are not writing on a clean slate. A unanimous court in Bush v. State, 431 So.2d 563 (Ala. 1983), observed:
 "In conclusion, we emphasize that Defendant's failure to raise the error of citation issue, while weighing against Defendant as to any possible claim of prejudice, serves as no impediment to our scope of review pursuant to the `plain error' mandate in death penalty cases. Accordingly, we find no irregularity nor impropriety in either the trial proper or in the sentencing procedure `adversely affecting the right of the defendant.' § 13A-5-53." 431 So.2d at 565.
The qualifying language (with respect to the defendant's increased burden to show prejudice) has no restrictive effect here, because prejudicial error is the explicit holding ofMurry. In other words, the majority opinion, without expressly overruling either case, chooses to ignore the combined precedent of Bush (holding that failure to preserve error in a death penalty case does not encumber appellate review) andMurry (holding that, where warranted by the evidence, failure to instruct the jury as to defendant's knowledge that the victim was a police officer was reversible error).
ALMON and SHORES, JJ., concur.
[1] The majority opinion's emphasis on the word "may," as giving this Court an option (thus interpreting "may" to mean "may or may not" rather than "can"), is clearly misplaced. Moreover, the rule applicable to the Court of Criminal Appeals (A.R.A.P. 45A) is "shall notice any plain error"; and this Court's review of the Court of Criminal Appeals' opinion is in the context of Rule 45A's mandate.