[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1072 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1073 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1074 
On August 5, 1994, a Jefferson County grand jury returned an indictment charging the appellant, Kenneth Loggins, with two counts of capital murder. Count I of the indictment charged Loggins with the capital offense of murder committed during the course of a kidnapping, §13A-5-40(a)(1), Ala. Code 1975. Count II of the indictment charged Loggins with the capital offense of murder committed during the course of a robbery, § 13A-5-40(a)(2), Ala. Code 1975. Loggins was tried on the charges, and the jury returned verdicts finding him guilty of capital murder, as charged in Count I of the indictment, and guilty of intentional murder, a lesser included offense of the capital murder charge in Count II of the indictment. See § 13A-6-2(a)(1), Ala. Code 1975. The trial court entered judgments of convictions on both verdicts.
With regard to Loggins's conviction for capital murder under Count I of the indictment, the jury, by a vote of 10-2, recommended that Loggins be sentenced to death. The trial court, following the jury's recommendation, sentenced Loggins to death by electrocution. With regard to Loggins's conviction for intentional murder as a lesser included offense under Count II of the indictment, the trial court sentenced Loggins to life in prison.
Most of the facts relevant to the issues raised in this appeal are set out in the trial court's sentencing order. The trial court's order, with our emendations, states, in pertinent part:
 "On the night of [February 21, 1994,] Vickie Deblieux, age 37, was dropped off by a friend on I-59 near Chattanooga, Tennessee, to hitchhike to her mother's home in Louisiana.
 "Four teenagers — the defendant, Carey Dale Grayson, Trace Duncan and Louis Mangione — all [of whom] had been drinking alcohol and using drugs, saw her hitchhiking on I-59 at the Trussville exit in Jefferson County, Alabama. They offered to take her to Louisiana; instead they took her to a wooded area, on the pretense of picking up another vehicle.
 "After arriving in this area, they all got out of the vehicle, and began to drink. [Loggins, along with the others, threw bottles at Ms. Deblieux, who began to run from them.] They tackled her to the ground and began to kick her repeatedly all over her body. When they noticed that she was still alive, the defendant stood on her throat, until she gurgled blood and said `Okay, I'll party,' then died.
 "They then put her body in the back of a pickup truck and took her and her luggage to Bald Rock Mountain, after removing her clothing [and a ring,] and they played with her body and then threw her off a cliff.
 "They then went to a car wash in Pell City to wash the blood out of the truck. *Page 1075 
[After rummaging through her luggage, they hid the luggage in the woods.]
 "On their return to Birmingham they took Mangione home and then returned to Bald Rock Mountain, where they began to mutilate the body by stabbing and cutting her 180 times, removing part of a lung and removing her fingers and thumbs.
 "The next morning, the defendant's girlfriend found the three of them in Birmingham asleep in the truck all covered in mud and blood. The defendant told her they got blood on them from a dog.
 "On [February 26, 1994,] three rock climbers found Ms. Deblieux's body and called the police. Her body was taken to the medical examiner's office.
 "The medical examiner found the following injuries: almost every bone in her skull was fractured, every bone in her face was fractured at least once, lacerations on the face over these fractures, a missing tooth, left eye was collapsed, right eye was hemorrhaged, tongue discolored, 180 stab wounds (postmortem), two large incisions in her chest, her left lung had been removed and all her fingers and both thumbs were cut off.
 "The medical examiner opined that the cause of death was blunt force trauma to the head and possible asphyxiation.
 "All defendants were later arrested after Mangione began showing one of Ms. Deblieux's fingers to friends."
(Supp. C. 12-13.)
On appeal from his conviction, Loggins raises 10 issues, at least 1 of which was not raised by objection in the trial court. Because Loggins was sentenced to death, his failure to object at trial does not bar our review of any issue. It does, however, weigh against him as to any claim of prejudice he makes on appeal. See Dill v. State, 600 So.2d 343
(Ala.Cr.App. 1991), aff'd, 600 So.2d 372 (Ala. 1992), cert. denied,507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993).
Rule 45A, Ala.R.App.P., provides:
 "In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
This court has recognized that the "`plain error exception to the contemporaneous-objection rule is to be "used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'"Burton v. State, 651 So.2d 641, 645 (Ala.Cr.App. 1993), aff'd,651 So.2d 659 (Ala. 1994), cert. denied, 514 U.S. 1115, 115 S.Ct. 1973,131 L.Ed.2d 862 (1995), quoting United States v. Young, 470 U.S. 1, 15,105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985), quoting in turn United Statesv. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816
(1982). Accordingly, we will address the issues Loggins raises on appeal.
 I.
Loggins contends that the trial court erred by allowing the jury to separate without his consent. Specifically, he argues that the trial court violated Rule 19.3(a), Ala.R.Crim.P., as that rule read at the time of his trial. At the time of Loggins's trial, Rule 19.3(a) provided:
"(a) Separation of Jurors in Capital Trials.
 "(1) In any prosecution for a capital felony, upon the consent in open court of the defendant, defendant's counsel, and the district attorney, the trial court, in its discretion, may permit the jury trying the case to separate during the pendency of the trial, whether the jury has retired or not." *Page 1076 
Under Rule 19.3(a), as that rule read at the time of Loggins's trial, the trial court was not authorized to allow the jury to separate without the consent of the prosecution and the defense. The state, however, argues that § 12-16-9, Ala. Code 1975, as amended effective June 15, 1995, placed the determination of whether to sequester the jury within the trial court's sole discretion. Section 12-16-9, as amended, provides:
 "In the prosecution of any felony case the trial court in its discretion may permit the jury hearing the case to separate during the pendency of the trial. The court may at any time on its own initiative or on motion of any party, require that the jury be sequestered under the charge of a proper officer whenever they leave the jury box or the court may allow them to separate. A motion to separate or sequester shall not be made within the hearing of the jury, and the jury shall not be informed which party, if any, requested separation or sequestration."
The Alabama Supreme Court recently addressed this issue in Ex parteStewart, 730 So.2d 1246 (Ala. 1999), and concluded that when the Legislature amended § 12-16-9, the statute superseded Rule 19.3(a), eliminated the need for agreement by the parties to separate the jury in capital cases, and vested in the trial court the discretion to make the separation decision in capital cases.[1] See also Ex parte Smith,727 So.2d 173 (Ala. 1999).
Accordingly, the trial court did not err in allowing the jury to separate without Loggins's consent.
Loggins further contends that even if the trial court did have the authority to allow the jury to separate without his consent, the trial court abused its discretion in so doing. Specifically, he argues as follows:
 "Evidence which was inadmissible or otherwise outside the province of proper jury consideration at trial was publicized so extensively during the trial, and during the prior trials of [Loggins's] codefendants, and in a manner so prejudicial to the interest of [Loggins], that the trial court's failure to sequester the jury constituted a violation of [his] right to a trial before a fair and impartial jury and to due process of law."
(Loggins's brief at 20.) Loggins, however, offers no evidence that any juror was influenced by the publicity.
After the jury was sworn, the trial court instructed the jurors as follows:
 "I just want to caution you about one thing. This is very important. And that is — and I don't know whether there's going to be anything written or on TV or radio about this case. Please do not read or listen [to] or watch anything about this case. Your decision has to be based on the evidence you hear in this trial and that alone, nothing outside this trial. It would be a violation of your oath to do those things. Please do not let anybody discuss this case with you in any way or around you in any way. You're not being sequestered in this case. In other words, you're not being kept together. We're allowing you to separate and go home. But it's very important you keep in mind my caution about outside influences in this case."
(R. 243-44.)
The jury was properly instructed on the danger of "outside influences"; jurors are presumed to follow the trial court's oral instructions. Taylor v. State, 666 So.2d 36, 70 (Ala.Cr.App. 1994), aff'd, 666 So.2d 73 (Ala. 1995), cert. denied, 516 U.S. 1120,116 S.Ct. 928, 133 L.Ed.2d 856 (1996). We find no indication in the record that the jury was influenced or tainted by outside factors. In the absence of any *Page 1077 
specific allegation or finding, we cannot say that the trial court abused its discretion.
 II.
Loggins contends that the trial court committed reversible error in denying his motion in limine, which sought to exclude evidence concerning the "mutilation or cannibalism" of Deblieux's body. Specifically, he argues that this evidence was inadmissible because, he says, it was not relevant and was highly prejudicial.
At trial the state argued that evidence of the mutilation of Deblieux's body, including photographs, was admissible to demonstrate to the jury "how the body was found, where it was found, and how the police identified the offenders."[2] (R. 13-14.)
"The determination of whether evidence is relevant and therefore admissible rests within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion."Nichols v. State, 624 So.2d 1328, 1338 (Ala.Cr.App. 1992). Whether photographic evidence is admissible is left to the sound discretion of the trial court, and its decision will not be reversed without a showing of abuse. Lewis v. State 465 So.2d 1185, 1189 (Ala.Cr.App. 1984). See C. Gamble, McElroy's Alabama Evidence, § 123.03 (5th ed. 1996). As a general rule, photographs are admissible if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial court. Hurst v. State, 397 So.2d 203, 206
(Ala.Cr.App.), cert. denied, 397 So.2d 208 (Ala. 1991).
 "Photographs illustrating crime scenes have been admitted into evidence, as have photographs of victims and their wounds. Furthermore, photographs that show the external wounds of a deceased victim are admissible even though the evidence is gruesome and cumulative and relates to undisputed matters. Finally, photographic evidence is admissible even if it has a tendency to inflame the minds of the jurors."
Ex parte Siebert, 555 So.2d 780, 783-84 (Ala. 1989) (citations omitted), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990).
The record reflects that after killing Deblieux, Loggins and two accomplices mutilated her body before throwing it off a cliff. The police were able to determine the identity of the offenders by reports from witnesses to whom Loggins supplied the details of the murder and how Deblieux's body was mutilated. In this case, the photographs illustrated the consequences of Loggins's involvement in the crime. Additionally, evidence of the mutilation and the photographs of the body were clearly material and relevant to show where and in what condition Deblieux's body was found. Although the photographs showing the condition of Deblieux's body were gruesome, there was no other way to demonstrate the crime scene, the torture inflicted upon Deblieux, the injuries she suffered, how she died, and the location of her body when it was discovered. Furthermore, the photographs elucidated the testimony of the medical examiner who performed the autopsy on Deblieux's corpse. Therefore, we find that the photographs and the testimony concerning the mutilation of Deblieux's body were relevant.
That being said, we are, however, also mindful of the well-settled principle that even where the proffered evidence is relevant, for the evidence to be admissible its probative value must not be substantially
outweighed by the danger of undue *Page 1078 
and unfair prejudice. Hayes v. State, 717 So.2d 30, 37 (Ala.Cr.App. 1997). "Prejudicial" in this context means having "`an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one.'" Averette v. State, 469 So.2d 1371, 1374
(Ala.Cr.App. 1985), quoting State v. Forbes, 445 A.2d 8, 12 (Me. 1982). The power to make this determination rests with the trial court; we will not disturb its determination unless the court has clearly abused its discretion. Hayes, 717 So.2d at 37.
We do not find that the evidence of the "mutilation or cannibalism" of Deblieux's body to be so prejudicial as to substantially outweigh the probative value of the evidence. The state had to prove Deblieux's cause of death. The mutilation of Deblieux's body was inextricably linked to the discussion of the cause of death. In some instances, the medical examiner was unable to determine whether an injury to Deblieux's body occurred before or after death. Additionally, we note that neither Loggins nor the record offers any other means to establish various aspects of the murder, especially how the police were able to identify the offenders. This evidence, as presented, was a necessary means of establishing essential elements of the crime.
Based on the foregoing, the trial court did not err in admitting into evidence the photographs and the testimony concerning the mutilation of Deblieux's body.
 III.
Loggins contends that the trial court erred in denying his motion to suppress evidence seized during a search of the vehicle he was sleeping in at the time of his arrest because, he says, the state failed to establish a sufficient chain of custody for the evidence. The items seized from the vehicle included boots, articles of clothing, and a piece of paper with the name and address of a friend of Deblieux's.
 "`"In reviewing the correctness of the trial court's ruling on a motion to suppress, this Court makes all the reasonable inferences and credibility choices supportive of the decision of the trial court. Additionally, if the trial court's ruling is correct for any reason, it will not be reversed because the trial court assigned the wrong reason. Harnage v. State, 290 Ala. 142, 144, 274 So.2d 352, 354
(1972).'"
J.M.V. v. State, 651 So.2d 1087, 1092 (Ala.Cr.App. 1994), quoting Kennedyv. State, 640 So.2d 22 (Ala.Cr.App. 1993), quoting in turn Bradley v.State, 494 So.2d 750, 760-61 (Ala.Cr.App. 1985), aff'd, 494 So.2d 772
(Ala. 1986), cert. denied, 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699
(1987).
At the hearing on Loggins's motion to suppress, Officer David Owen of the Jefferson County Sheriff's Department testified that he arrested Loggins and an accomplice on April 10, 1994, at approximately 3:30 a.m. when he found them sleeping in Loggins's blue 1976 Chevrolet Malibu automobile. He testified that after he arrested Loggins and the accomplice, he and another officer locked the vehicle and transported the two men to the police station. According to Officer Owen, he followed police procedure for vehicle impoundment: he contacted Kemp's Wrecker Service to tow the vehicle to the impound lot. Officer Owen testified that when he returned to the vehicle to meet the wrecker driver, the vehicle was locked and in the same condition as when he left it. He stated that the last time he saw the vehicle, the vehicle was secured and the wrecker was pulling it to the impound lot.
Officer Joe Sweatt, an Investigator for the St. Clair County Sheriff's Department, testified that he obtained a warrant to search the blue 1976 Chevrolet Malibu based on information that Loggins and an accomplice were arrested in this vehicle and that possibly evidence relating to Deblieux's murder was in the car. Once he obtained the warrant, he searched the vehicle *Page 1079 
at the impound lot. He testified that when he arrived at the impound lot, the vehicle was locked. Additionally, he testified that the impound lot was secure. After hearing arguments by Loggins's counsel and the state, the trial court denied the motion.
On appeal, Loggins argues that the state failed to establish a sufficient chain of custody because, he says, "no officer was present while Kemp's Wrecker Service took the vehicle to the impound lot and there was no testimony to establish that nothing in the car was tampered with during that period." (Loggins's brief at 23-24.)
 "`"The purpose for requiring that the chain of custody be shown is to establish to a reasonable probability that there has been no tampering with the evidence." Ex parte Jones, 592 So.2d 210, 212 (Ala. 1991); Harrell v. State, 608 So.2d 434, 437 (Ala.Cr.App. 1992); Smith v. State, 583 So.2d 990 (Ala.Cr.App. 1991), cert. denied, 583 So.2d 993 (Ala. 1991). Moreover, the evidence need not negate the remotest possibility of substitution, alteration, or tampering, but instead must prove to a reasonable probability that the item is the same as it was at the beginning of the chain. Harrell, at 437; Ex parte Williams, 548 So.2d 518 (Ala. 1989). Evidence has been held correctly admitted even when the chain of custody has a weak or missing link. Gordon v. State, 587 So.2d 427, 433 (Ala.Cr.App. 1990), rev'd, 587 So.2d 435 (Ala.Cr.App.), appeal after remand, 591 So.2d at 149 (Ala.Cr.App. 1991); Shute v. State, 469 So.2d 670, 674 (Ala.Cr.App. 1984). In Gordon, this court held that because there was no evidence that the victim's body had been tampered with in any way, sufficient chain of custody had been established. Gordon, 587 So.2d at 433.'"
Arthur v. State, 711 So.2d 1031, 1048 (Ala.Cr.App. 1996), aff'd,711 So.2d 1097 (Ala. 1997), quoting Slaton v. State, 680 So.2d 879, 893
(Ala.Cr.App. 1995), aff'd, 680 So.2d 909 (Ala. 1996), cert. denied,519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997).
Here, Officer Owen testified that he secured the vehicle before he left the scene of the arrest to take Loggins and his accomplice to the station. According to Officer Owen, when he returned to the vehicle to await the wrecker service, the vehicle was in the same secured condition as when he left it. Officer Sweatt testified that the vehicle was locked and secured when he began his search of the vehicle at the impound lot and found the items that are the subject of the motion to suppress. Although such circumstances as presented in this case may indicate a weak link in the chain of custody, they do not render the evidence inadmissible. Since the purpose of chain of custody evidence is "to establish to a reasonable probability that there has been no tampering with the evidence," we hold that the trial court properly admitted the evidence and submitted the question to the jury; it was the jury's function to determine the weight to be accorded the evidence. This court will not reweigh the evidence.
Moreover, the evidence from the vehicle was also admissible under § 12-21-13, Ala. Code 1975, which provides:
 "Physical evidence connected with or collected in the investigation of a crime shall not be excluded from consideration by a jury or court due to a failure to prove the chain of custody of the evidence. Whenever a witness in a criminal trial identifies a physical piece of evidence connected with or collected in the investigation of a crime, the evidence shall be submitted to the jury or court for whatever weight the jury or court may deem proper. The trial court in its charge to the jury shall explain any break in the chain of custody concerning the physical evidence."
Accordingly, we find no error as to this claim. *Page 1080 
 IV.
Loggins also contends that the trial court erred by admitting into evidence items seized from his automobile because, he says, the search during which the items were found was illegal. Specifically, Loggins argues that the affidavit supporting the search warrant did not support a finding of probable cause by the district court and was insufficient because, he says, Officer Sweatt, the affiant, failed to state with particularity what was to be searched.
 "Probable cause must be determined by an analysis of `the totality of the circumstances.' Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In determining whether to issue a search warrant, the issuing magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of the person supplying the information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates; Hyde v. State, 534 So.2d 1132 (Ala.Cr.App. 1988). Our duty as a reviewing court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. Illinois v. Gates; McCray v. State, 501 So.2d 532 (Ala.Cr.App. 1986); Hyde v. State. Probable cause may be based on hearsay from a reliable source if there is a disclosed, reliable basis for the information. Illinois v. Gates, 462 U.S. at 245, 103 S.Ct. at 2335; United States v. Hernandez, 825 F.2d 846, 849-50 (5th Cir. 1987), cert. denied, 484 U.S. 1068, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988); United States v. Asselin, 775 F.2d 445
(1st Cir. 1985); Waldrop v. State, 462 So.2d 1021
(Ala.Cr.App. 1984), cert. denied, 472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed.2d 618 (1985). Information from fellow officers may be relied on. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684
(1965). However, `To comply with the requirements of particularity and to make an independent probable cause evaluation, . . . the agent must state in the affidavit that he is relying upon other officers.' United States v. Kirk, 781 F.2d 1498 (11th Cir. 1986)."
Marks v. State, 575 So.2d 611, 614-15 (Ala.Cr.App. 1990).
Section 15-5-3, Ala. Code 1975, provides that "[a] search warrant can only be issued on probable cause, supported by an affidavit naming or describing the person and particularly describing the property and place to be searched."
The record of the hearing on Loggins's motion to suppress the evidence seized from his vehicle indicates that the district court made its determination of probable cause based solely on Officer Sweatt's affidavit.
The affidavit of Officer Sweatt stated, in pertinent part:
 "[Officer Joe Sweatt says:] On February 26, 1994, the nude, mutilated body of a white female, later identified as Vickie Lynn Deblieux, was found near the microwave towers on Bald Rock Mountain in St. Clair County. Her body was identified by medical and dental records obtained from Chattanooga, Tennessee, which was her last known address. She was in the process of hitchhiking from near the Alabama-Georgia state line on I-59 South en route to Monroe, Louisiana. She had been dropped off at or near the Alabama-Georgia state line by a friend of hers from Chattanooga by the name of Elmer A. Smith on February 21, 1994.
 "Part of the mutilation of her body involved the removal of her fingers. In late March of 1994 information began to come to me that an individual who is a 16-year-old juvenile (hereinafter `Juvenile A') was showing a finger to people and telling them it came from a body in St. Clair County. M.B.F., Apartment 30, Pinecrest Apartments, Leeds, Alabama, told me on April 6, 1994, that Juvenile A had shown him a finger and *Page 1081 
told him that it was a finger from the body of a woman in St. Clair County. I, along with other investigators, interviewed Juvenile A at the East Precinct of the Birmingham Police Department beginning on the night of April 6, 1994. He informed us that he and three other individuals whom he identified as Carey Dale Grayson and juveniles later herein identified as `Juvenile B' and `Juvenile C' [Loggins] had picked up the victim at or near the Trussville exit of I-59 and offered her a ride to Monroe, Louisiana, but that instead of going there they had gone to an area near Medical Center East, where the victim, after refusing their sexual advances, had been hit in the head with a beer bottle, stomped and kicked until dead and then her body had been taken to the area where it was discarded. . . . Juvenile A also told me that when the victim was picked up, she had two cloth bags with her containing her personal belongings. I also went on April 7, 1994, to the area near Medical Center East described by Juvenile A and found a prescription medicine bottle bearing the victim's name, earrings, cosmetics, and some items of clothing.
 "In addition to Juvenile A, I have interviewed Carey Dale Grayson and another juvenile (hereinafter `Juvenile B') who have corroborated the circumstances as detailed by Juvenile A surrounding the picking up of the victim and her ultimate death. In addition to the fingers being removed during mutilation, the victim's chest cavity was also opened and some of her internal organs removed. The weapon by which this was accomplished was, according to two of the three individuals I have interviewed, a Buck pocket knife which has yet to be located. It is, according to them, the property of Carey Dale Grayson. The victim's body was removed from the Medical Center East location to the area in St. Clair County where her body was dumped in a 1975 white Chevrolet pickup truck, the property of one of the three juveniles ([Loggins]) involved in this crime. That particular truck has already been retrieved and processed by forensic technicians. Subsequent to the commission of this crime and prior to identification of the perpetrators, [Loggins] traded the pickup truck to an individual by the name of James Eugene Hobson in return for a 1976 Chevrolet Malibu, blue in color, bearing Alabama Tag No. 1BDZ195 and Vehicle Identification No. 1D37V6D535257. That Malibu is presently under impound at the Kemp's Wrecker lot on Finley in Jefferson County, Alabama. Sonya Gray, who knows Grayson and the three juveniles, told me within the past week that [Loggins] and Juvenile B were both living in the car and keeping their clothing and other possessions [in] it. She also told me that [Loggins] has continued to wear the clothing, still bearing bloodstains, that he wore the night of this crime. Juvenile A told me that [Loggins] showed him five fingers removed from the victim's body; those fingers are still missing. The victim was kicked and stomped as she was killed and bled profusely. Her blood is probably present on the shoes/boots and clothing of the persons who caused her death."
(C. 318-19.)
The affidavit provides ample information from which the district court could find probable cause and issue a warrant to search Loggins's vehicle. The affidavit clearly states the crime, Loggins's participation in it, and the fact that Loggins's vehicle may contain the clothes Loggins was wearing on the night of the crime. Additionally, we find that the place to be searched was adequately identified, pursuant to §15-5-3, Ala. Code 1975. Here, the affidavit identified Loggins's vehicle with particularity, including its color, model, vehicle identification number, and license tag number, as well as the location of the vehicle. *Page 1082 
Furthermore, assuming, for the sake of argument, that the affidavit was deficient, we still would find no error.
 "The Fourth Amendment does not require the police to obtain a warrant to search an automobile when they have probable cause to believe it contains contraband or evidence of criminal activity. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419
(1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.2d 543 (1925). . . .
 "In Chambers v. Maroney, the Court held that when police officers have probable cause to believe there is contraband [or evidence of criminal activity] inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody."
Griffin v. State, 579 So.2d 35, 37 (Ala.Cr.App. 1991). The police had probable cause to search Loggins's vehicle for evidence of criminal activity. Therefore, they could lawfully conduct a warrantless search of Loggins's vehicle at the police.
Accordingly, we hold that the search of Loggins's vehicle was legal and that the items seized from that search were properly admitted into evidence.
 V.
Loggins contends that during his closing argument at the penalty phase, the prosecutor impermissibly commented on the fact that Loggins did not testify at trial. Specifically, Loggins argues that the prosecutor referred to his failure to testify when he made the following remarks:
 "[Prosecutor]: And he deserves to pay the ultimate penalty for the ultimate crime. And if there's one smidgeon of thought in your mind that he might have ever felt anything but a thrill out of this, look back to where he wrote — whether they're his words or lyrics that he liked, `I am free. I can kill without remorse.' And throughout every word you've heard from this witness stand in this courtroom this entire week has there been an iota of remorse? None. Absolutely none. What you got instead was much later on about the last thing we know of that he said to other people before he got arrested was when he and Grayson laughingly said to each other that Hope Hanson overheard, `Let's go pick a hitchhiker.'"
(R. 1064-65.) (Emphasis indicates portion of prosecutor's remarks Loggins's complains of on appeal.) Because Loggins raised no objection at trial concerning this comment, we review this claim on appeal under the plain error rule. Rule 45A, Ala.R.App.P.
 "We note that defense counsel's failure to object to these comments does not prevent our review. However, the failure to object should be weighed as part of our evaluation of the comments, because the failure to object may suggest that the defense did not consider the comments to be particularly harmful. Ex parte Kennedy, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985)."
Ex parte Payne, 683 So.2d 458, 465 (Ala. 1996), cert. denied,520 U.S. 1146, 117 S.Ct. 1319, 137 L.Ed.2d 481 (1997).
 "`Comments by a prosecutor on a defendant's failure to testify are highly prejudicial and harmful, and courts must carefully guard against a violation of a defendant's constitutional right not to testify. Whitt [v. State, 370 So.2d 736], 739 [(Ala. 1979)]; Ex parte Williams, 461 So.2d 852, 853 (Ala. 1984); see Ex parte Purser, 607 So.2d 301 (Ala.Crim.App. 1992). This Court has held that comments by a prosecutor that a jury may possibly take as a reference to the defendant's failure to testify violate Art. I, § 6, of the Alabama Constitution of 1901. Ex parte Land, 678 So.2d 224
(Ala.), cert. denied, 519 U.S. 933, 117 S.Ct. 308, 136 L.Ed.2d 224 (1996); Ex parte McWilliams, 640 So.2d 1015
(Ala. 1993); *Page 1083 Ex parte Wilson, [571 So.2d 1251, 1261 (Ala. 1990)]; Ex parte Tucker, 454 So.2d 552 (Ala. 1984); Beecher v. State, 294 Ala. 674, 320 So.2d 727 (1975). Additionally, the Fifth and Fourteenth Amendments of the United States Constitution may be violated if the prosecutor comments upon the accused's silence. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Ex parte Land, supra; Ex parte Wilson, supra. Under federal law, a comment is improper if it was "`"manifestly intended or was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" United States v. Herring, 955 F.2d 703, 709 (11th Cir.), cert. denied, 506 U.S. 927, 113 S.Ct. 353, 121 L.Ed.2d 267 (1992) (citations omitted); Marsden v. Moore, 847 F.2d 1536, 1547 (11th Cir.), cert. denied, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988); United States v. Betancourt, 734 F.2d 750, 758 (11th Cir.), cert. denied, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 365 (1984). The federal courts characterize comments as either direct or indirect, and, in either case, hold that an improper comment may not always mandate reversal.
 "`Consistent with this reasoning, Alabama law distinguishes direct comments from indirect comments and establishes that a direct comment on the defendant's failure to testify mandates the reversal of the defendant's conviction, if the trial court failed to promptly cure that comment. Whitt v. State, supra; Ex parte Yarber, supra; Ex parte Williams, supra; Ex parte Wilson, supra. On the other hand, "covert," or indirect, comments are construed against the defendant, based upon the literal construction of Ala. Code 1975, § 12-21-220, which created the "virtual identification doctrine." Ex parte Yarber, 375 So.2d at 1234. Thus, in a case in which there has been only an indirect reference to a defendant's failure to testify, in order for the comment to constitute reversible error, there must have been a virtual identification of the defendant as the person who did not become a witness. Ex parte Yarber, 375 So.2d [1231,] 1234 [(Ala. 1979)]; Ex parte Williams, supra; Ex parte Wilson, supra; Ex parte Purser, supra. A virtual identification will not exist where the prosecutor's comments were directed toward the fact that the State's evidence was uncontradicted, or had not been denied. See Beecher v. State, 294 Ala. 674, 682, 320 So.2d 727, 734 (1975); Ex parte Williams, supra; Ex parte Purser, supra. Yet, in such circumstances, it becomes important to know whether the defendant alone could have provided the missing evidence.
 "`A challenged comment of a prosecutor made during closing arguments must be viewed in the context of the evidence presented in the case and the entire closing arguments made to the jury — both defense counsel's and the prosecutor's. Ex parte Land, supra; Windsor v. State, 683 So.2d 1021, 1023 (Ala. 1994); Ex parte Musgrove, 638 So.2d 1360, 1368 (Ala. 1993), cert. denied, 513 U.S. 845, 115 S.Ct. 136, 130 L.Ed.2d 78 (1994).'"
Ex parte Clark, 728 So.2d 1126, 1131 (Ala. 1998), quoting Ex parteBrooks, 695 So.2d 184, 188-89 (Ala. 1997).
Moreover, in Harris v. State, 632 So.2d 503, 536 (Ala.Cr.App. 1992), aff'd, 632 So.2d 543 (Ala. 1993), aff'd, 513 U.S. 504, 115 S.Ct. 1031,130 L.Ed.2d 1004 (1995), we held that a reference to the defendant's lack of remorse during the sentencing stage of the trial was not improper argument, because the comment "was a proper inference from the evidence, because testimony had been introduced at trial that the appellant's reaction to being informed of her husband's death was so unemotional that she was questioned concerning her reaction." Similarly, in Dobyne v.State, 672 So.2d 1319 (Ala.Cr.App. 1994), aff'd, 672 So.2d 1354 (Ala. 1995), cert. denied, 517 U.S. 1169, 116 S.Ct. 1571, 134 L.Ed.2d 670 *Page 1084 
(1996), we held that a prosecutor's comment, during the sentencing phase of the trial, on the defendant's lack of remorse was a comment "on the appellant's demeanor when he made his statement to police." 672 So.2d at 1349.
In this situation, we find that the prosecutor's remarks were proper inferences from the evidence of Loggins's actions following the murder; they were not a reference to Loggins's failure to testify. The evidence indicated that Loggins had bragged about the murder — even joked with an accomplice about committing another similar act in the future. Loggins had witnesses testify about his losing control, throwing tantrums, and not remembering his actions once the outbursts subsided. The prosecutor's remarks merely refuted Loggins's defense that he had killed Deblieux in a temporary rage by pointing out that Loggins not only recalled his actions, but was not remorseful and even bragged about the murder to friends. The prosecutor's remarks were proper inferences from the evidence and did not constitute error — plain or otherwise.
This court has held:
 "`Counsel in the trial of any lawsuit has the unbridled right (to be sure, the duty) to argue the reasonable inferences from the evidence most favorable to his client.' Ex parte Ainsworth, 501 So.2d 1269, 1270 (Ala. 1986) (footnote omitted). `[T]he rule is that counsel are allowed considerable latitude in drawing their deductions from the evidence in argument to the jury.' Espey v. State, 270 Ala. 669, 674, 120 So.2d 904, 907 (1960)."
Kuenzel v. State, 577 So.2d 474, 492 (Ala.Cr.App. 1990), aff'd,577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct 242,116 L.Ed.2d 197 (1991). Furthermore, "[r]emorse is a proper subject of comment during sentencing." Travis v. State, [Ms. CR-92-0958, April 18, 1997] ___ So.2d ___, ___ (Ala.Cr.App. 1997), citing Dobyne, 672 So.2d at 1348-49. See Taylor v. State, 666 So.2d 36, 55 (Ala.Cr.App. 1994), aff'd, 666 So.2d 73 (Ala. 1995), cert. denied, 516 U.S. 1120,116 S.Ct. 928, 133 L.Ed.2d 856 (1996) (holding that a prosecutor's references to a defendant's lack of remorse were not comments on the defendant's constitutional right against self-incrimination but rather were references to his behavior after he murdered the victims).
 VI.
Loggins contends that the trial court erred in denying his motion for a continuance, made on the ground that he needed more time to examine the state's psychological evaluation.
The trial court has broad discretion in granting a continuance when the basis for the motion is that counsel has not had sufficient time to prepare or to develop his defense. Godfrey v. State, 383 So.2d 575, 577
(Ala.Cr.App.), cert. denied, 383 So.2d 579 (Ala.), cert. denied,449 U.S. 903, 101 S.Ct. 276, 66 L.Ed.2d 134 (1980), citing Smith v.State, 282 Ala. 268, 210 So.2d 826 (1968). "A motion for a continuance due to a lack of time for adequate preparation is a matter entirely and exclusively within the sound discretion of the trial court and its ruling will not be reversed on appeal absent a . . . showing of abuse." Reynoldsv. State, 539 So.2d 428, 429 (Ala.Cr.App. 1988), cert. denied,539 So.2d 428 (Ala. 1989). Moreover, "[t]he reversal of a conviction because of the refusal of the trial judge to grant a continuance requires `a positive demonstration of abuse of judicial discretion.' Clayton v.State, 45 Ala. App. 127, 129, 226 So.2d 671, 672 (1969)." Beauregard v.State, 372 So.2d 37, 43 (Ala.Cr.App.), writ denied, 372 So.2d 44 (Ala. 1979) (emphasis added).
Loggins made his motion to continue on the Monday his trial was to begin. In support of his motion, Loggins argued that he had received the state's psychological evaluation that morning and that he had not had ample time to review it. The prosecutor, in his response to Loggins's motion, stated: *Page 1085 
 "[Prosecutor]: Yes sir. I think I'll get these days correct, Judge. As Your Honor will recall, the defense was provided funds with which to retain Dr. Fleming [Loggins's psychological expert], some time ago. And this case was continued at its last setting because of nondisclosure of Dr. Fleming's examination. Subsequent to that we made a decision not to seek further evaluation on the basis [of] Dr. Fleming's initial report that the defendant was not insane at the time — legally insane at the time these acts were committed.
 "Following that, last week — excuse me, week before last, I think on Friday, which would have been the — approximately the 16th of November, we received an addendum to Dr. Fleming's report in which he states that he would now testify that the defendant was insane at the time this act was committed. So we sought the Court's permission and did get Dr. Rosencras to conduct an examination. On that short notice I think Dr. Rosencras did a remarkable job of getting this done on Monday and Wednesday of last week. He dictated his report on Thanksgiving Day. It was typed apparently Friday and faxed to us on Friday evening. In fact, [a prosecutor] stayed in the office late and waited, and immediately faxed it to [Loggins's counsel] as soon as he obtained it.
 "I want to make all of that clear because I want to make it clear to the Court that we feel that we're absolutely free of fault in bringing on this problem. We have done with alacrity everything we could possibly do to inform the defense of what Dr. Rosencras's report was."
(R. 7-9.) Loggins's counsel acknowledged that the fax copy of the psychological evaluation indicated that it had arrived in his office on Friday evening, but stated that he had already left his office for the weekend when it arrived.
In this situation, we cannot say that the trial court's refusal to grant the continuance constituted "a positive demonstration of abuse of judicial discretion." The explanation offered by the state reflects that there was no misconduct on the part of the state. We note that the testimony for which Loggins had requested time to prepare was presented on the fourth day of trial and was presented to rebut the testimony of Loggins's psychological expert. We have examined the cross-examination of Dr. Rosencras by Loggins's counsel and find it to be both thorough and extensive. Additionally, Loggins has made no showing as to how the refusal to grant a continuance prejudiced him. Therefore, based on the foregoing reasons, we hold that the trial court did not abuse its discretion in denying the motion for a continuance.
 VII.
Loggins contends that the trial court erred in denying his motion requesting to be allowed to use a jury questionnaire and requesting funds to retain a jury-selection expert.
 "A trial court has much discretion in determining how voir dire is conducted, and a court's decision on how extensive voir dire examination must be will be upheld on appeal unless the court abused its discretion. Ex parte Land, 678 So.2d 224, 241-42 (Ala.), cert. denied, 519 U.S. 933, 117 S.Ct. 308, [136 L.Ed.2d 224] (1996)."
Burgess v. State, 723 So.2d 742, 761 (Ala.Cr.App. 1997), aff'd,723 So.2d 778 (Ala. 1998).
Although Loggins asserts that the trial court's refusal to allow him to use a jury questionnaire prevented him from selecting a fair and impartial jury, he offers no evidence to support his claim. We have reviewed the voir dire of the venire and find that Loggins was allowed to conduct an extensive voir dire. We find no abuse of discretion.
Additionally, we find no error in the trial court's denial of Loggins's request for funds to hire a jury-selection expert. *Page 1086 
 "To be entitled to funds to pay for an expert, a defendant must show the trial court that there is a reasonable probability that the expert would assist the defense and that the denial of the expert would result in a fundamentally unfair trial."
Burgess, 723 So.2d at 762. See also Thomas v. State, 766 So.2d 860
(Ala.Cr.App. 1998); and Bush v. State, 695 So.2d 70, 104 (Ala.Cr.App. 1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, 522 U.S. 969,118 S.Ct. 418, 139 L.Ed.2d 320 (1997) (upholding the denial of funds for a jury-selection expert in a capital case because the appellant made only undeveloped assertions that the requested assistance would be beneficial).
While Loggins asserts that a jury-selection expert was needed to assist in the selection of a fair and impartial jury, he has not demonstrated that there was a reasonable probability that such an expert would have assisted his defense or that the denial of funds to hire such an expert deprived him of a fair trial. Therefore, we find no error.
Accordingly, we find that none of Loggins's claims with regard to the jury-selection process warrant reversal.
 VIII.
Loggins contends that the trial court erred in admitting into evidence 50 autopsy photographs indicating the wounds on Deblieux's body.
 "`"[P]hotographs that show the external wounds of a deceased victim are admissible even though the evidence is gruesome and cumulative and relates to undisputed matters." Ex parte Siebert, 555 So.2d 780, 783 (Ala. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). See also Ex parte Bankhead, 585 So.2d 112 (Ala. 1991). "[P]hotographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors." Ex parte Siebert, at 784. See also Ex parte Bankhead. We find no error in the trial court's admission of the photographs at the guilt phase of the trial. See, e.g., Smith v. State, 581 So.2d 497 (Ala.Cr.App. 1990), rev'd on other grounds, 581 So.2d 531 (Ala. 1991) (photographs of victim's decomposed and bloated body properly admitted); Dabbs v. State, 518 So.2d 825
(Ala.Cr.App. 1987) (photographs of victim's head injuries taken during autopsy were gruesome but necessary to demonstrate extent of injuries); Hamilton v. State, 492 So.2d 331 (Ala.Cr.App. 1986) (photographs of deceased's exposed scalp properly admitted into evidence).'"
Boyd v. State, 715 So.2d 825, 833 (Ala.Cr.App. 1997), aff'd, 715 So.2d 852
(Ala.), cert. denied, 525 U.S. 968, 119 S.Ct. 416, 142 L.Ed.2d 338
(1998).
"`Photographs which show wounds on a victim's body which tend to corroborate the testimony of a toxicologist as to the number and location of the wounds are admissible.'" Williams v. State, 506 So.2d 368, 371
(Ala.Cr.App. 1986), writ denied, 506 So.2d 372 (Ala. 1987), quotingWashington v. State, 415 So.2d 1175, 1180 (Ala.Cr.App. 1982).
In Part II of this opinion, we concluded that the photographs, although gruesome, were admissible, because their probative value outweighed their prejudicial impact. Loggins, however, appears to argue that the sheer number of autopsy photographs admitted into evidence was excessive and therefore prejudicial. We note, however, that the injuries and wounds to Deblieux's body were numerous and extensive. Before Deblieux's death, Loggins and his accomplices threw bottles at her, tackled her and threw her to the ground, kicked her body repeatedly, and asphyxiated her by standing on her throat. The medical examiner testified that almost every bone in her skull was fractured and every bone in her face had been fractured at least once. He further testified that in his opinion Deblieux died from blunt-force trauma to the head and possibly from asphyxiation. *Page 1087 
We have reviewed the challenged photographs and conclude that the trial court did not err in admitting the photographs into evidence. The majority of the photographs were not cumulative.
Additionally, we are unpersuaded by Loggins's argument that the sheer number of photographs admitted made them prejudicial. As we have previously stated, "`"[p]erpetrators of crimes that result in gruesome scenes have reason to expect that photographs of those gruesome scenes will be taken and admitted into evidence.'" Price v. State, 725 So.2d 1003,1053 (Ala.Cr.App. 1997) (citing Jenkins v. State, 627 So.2d 1034, 1045
(1992), aff'd, 627 So.2d 1054 (Ala. 1993))." Mack v. State,736 So.2d 664, 673 (Ala.Cr.App. 1998), aff'd, 736 So.2d 681 (Ala. 1999).
The photographs depicted the gravity of the acts committed against Deblieux. In light of the severity and number of Deblieux's injuries, the risk that the pictures of her corpse would inflame the jury "comes with the territory." Grice v. State, 527 So.2d 784, 787 (Ala.Cr.App. 1988). See Haney v. State, 603 So.2d 368, 396 (Ala.Cr.App. 1991), aff'd,603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297,122 L.Ed.2d 687 (1993), quoting Magwood v. State, 494 So.2d 124, 141
(Ala.Cr.App. 1985), aff'd, 494 So.2d 154 (Ala.), cert. denied,479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986) (holding that "the fact that a photograph is gruesome and ghastly is no reason to exclude its admission into evidence, if it has some relevancy to the proceedings, even if the photographs may tend to inflame the jury"). The trial court committed no error in admitting the photographs over Loggins's objection that the sheer number of photographs was prejudicial.
 IX.
Loggins contends that the trial court abused its discretion during the sentencing phase of his trial because, he says, the trial court erred in not finding that the capital offense was committed while he was under the influence of extreme mental or emotional disturbance, § 13A-5-51(2), Ala. Code 1975, and in not finding that at the time of the offense his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired, §13A-5-51(6), Ala. Code 1975. He further argues that the trial court erred in finding that the capital offense was especially heinous, atrocious, or cruel when compared to other capital offenses, § 13A-5-49(8), Ala. Code 1975.
 "`A sentencer in a capital case may not refuse to consider or be "precluded from considering" mitigating factors. Eddings v. Oklahoma, 455 U.S. 104, 110, 71 L.Ed.2d 1, 102 S.Ct. 869, [874] (1982) (quoting Lockett v. Ohio, 438 U.S. 586, 604, 57 L.Ed.2d 973, 98 S.Ct. 2954, [2964-65] (1978)). The capital defendant generally must be allowed to introduce any relevant mitigating evidence regarding the defendant's character or record and any of the circumstances of the offense, and consideration of that evidence is a constitutionally indispensable part of the process of inflicting the penalty of death. California v. Brown, 479 U.S. 538, 93 L.Ed.2d 934, 107 S.Ct. 837 (1987); Ex parte Henderson, 616 So.2d 348 (Ala. 1992); Haney v. State, 603 So.2d 368 (Ala.Cr.App. 1991), aff'd, 603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925, 122 L.Ed.2d 687, 113 S.Ct. 1297 (1993). Although the trial court is required to consider all mitigating circumstances, the decision of whether a particular mitigating circumstance is proven and the weight to be given it rests with the sentencer. Carroll v. State, 599 So.2d 1253 (Ala.Cr.App. 1992), aff'd, 627 So.2d 874
(Ala. 1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994). See also Ex parte Harrell, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 88 L.Ed.2d 276, 106 S.Ct. 269 (1985).'"
Arthur v. State, 711 So.2d 1031, 1091 (Ala.Cr.App. 1996), aff'd,711 So.2d 1097 (Ala. *Page 1088 
1997), quoting Bush v. State, 695 So.2d 70, 89 (Ala.Cr.App. 1995).
However, "[m]erely because an accused proffers evidence of a mitigating circumstance does not require the judge or the jury to find the existence of that fact. Mikenas [v. State], 407 So.2d 892, 893 (Fla. 1981)]; Smith[v. State, 407 So.2d 894 (Fla. 1981)]." Harrell v. State, 470 So.2d 1303,1308 (Ala.Cr.App. 1984), aff'd, 470 So.2d 1309 (Ala.), cert. denied,474 U.S. 935, 88 L.Ed.2d 276, 106 S.Ct. 269 (1985).
Loggins contends that the evidence presented by his high school teachers and by Dr. Fleming, his psychological expert, indicated that he was suffering from an extreme mental or emotional disturbance at the time of the offense, and that he was unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. The sentencing order, however, clearly reflects that the trial court complied with the law in determining that death was the appropriate sentence.
In its sentencing order, the trial court stated that it had considered the testimony of Dr. Fleming, Dr. Rosencras, and all other witnesses during both the guilt and sentencing stages of this trial before finding that these two mitigating circumstances did not exist. Because the record reflects that the trial court considered the evidence presented by Loggins with regard to these mitigating circumstances, especially the testimony of the psychological experts, we believe the trial court carefully weighed the evidence when making its determination. Moreover, it is clear from a review of the entire record that the trial court understood its duty to consider all the evidence presented and that it did not abuse its discretion in finding that these statutory mitigating circumstances did not exist. See Ex parte Hart, 612 So.2d 536, 542 (Ala. 1992), cert. denied, 508 U.S. 953, 113 S.Ct. 2450, 124 L.Ed.2d 770
(1993); Ex parte Jones, 520 So.2d 553, 555 (Ala.), cert. denied,488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988); Johnson v. State,620 So.2d 679, 705-06 (Ala.Cr.App. 1992), rev'd on unrelated grounds,620 So.2d 709 (Ala.), cert. denied, 510 U.S. 905, 114 S.Ct. 285,126 L.Ed.2d 235 (1993); and Bankhead v. State, 585 So.2d 97, 108
(Ala.Cr.App. 1989), aff'd in pertinent part, 585 So.2d 112 (Ala. 1991).
Loggins further contends that the trial court erred in finding as a statutory aggravating circumstance that the murder was especially "heinous, atrocious or cruel compared to other capital offenses" because, he says, the trial court based its finding on postmortem acts.
Section 13A-5-49(8), Ala. Code 1975, provides that the following shall be a statutory aggravating circumstance: "The capital offense was especially heinous, atrocious or cruel compared to other capital offenses." To determine whether an offense is especially "heinous, atrocious or cruel compared to other capital offenses" the court considers those "conscienceless or pitiless homicides which are unnecessarily torturous to the victim." See McMillan v. State,594 So.2d 1253 (Ala.Cr.App. 1991); Bradley v. State, 494 So.2d 750
(Ala.Cr.App. 1985), aff'd, 494 So.2d 772 (Ala. 1986), cert. denied,480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987). See also Lindsey v.Thigpen, 875 F.2d 1509 (11th Cir. 1989).
With regard to its finding that this capital offense was especially "heinous, atrocious or cruel compared to other capital offenses," the trial court's sentencing order provided:
 "The Court finds, based on the following facts, that this aggravating circumstance does exist.
 "After Ms. Deblieux was hit in the head with a bottle, she was then tackled and brought to the ground where she was repeatedly kicked in the head and body by the defendant and his accomplices. At one point one of them stood on her throat until she gurgled and said `Okay, I'll party' and died. *Page 1089 
 "The medical examiner testified that among other injuries, she had every facial bone in her face broken at least once, and multiple head and body injuries, including a swollen tongue which indicated multiple blows to the head and asphyxiation.
 "And although the 180 stab and incise wounds were committed postmortem, which included removing the lung, these injuries do reflect the shockingly evil conscienceless and pitiless nature of the crime."
(Supp. C. 16.) (Emphasis added.)
We reject Loggins's claim that "the trial court's finding that the offense was especially heinous, atrocious or cruel was incorrect as it was based on the postmortem mutilation of the victim's body." (Loggins's brief at 34.) The evidence at trial indicated that the manner in which Loggins and his accomplices killed Deblieux was merciless and sadistic. The findings of the trial court are fully supported by the testimony and evidence and the finding of this aggravating circumstance is fully justified. Therefore, there was no error in the trial court's finding that the state established that the offense was especially heinous, atrocious, or cruel when compared to other capital offenses. See Ex parteMcNair, 653 So.2d 353, 360 (Ala. 1994), cert. denied, 513 U.S. 1159,115 S.Ct. 1121, 130 L.Ed.2d 1084 (1995).
 X.
Loggins contends that his conviction and sentence are due to be reversed because the record on appeal does not include a transcript of the sentencing hearing. Pursuant to the state's request, this court supplemented the record to include a transcript of the sentencing hearing. Therefore, this issue is moot.
 XI.
In accordance with Rule 45A, Ala.R.App.P., we have examined the record for any plain error with respect to Loggins's capital murder conviction and death sentence, whether or not brought to our attention or to the attention of the trial court. We note that during the penalty phase of the trial, the trial court charged the jury before counsel gave their closing arguments. The record reflects that at the beginning of the penalty phase, the trial court gave complete and accurate instructions on sentencing and that there were no objections to the trial court's charge to the jury. The trial court's instructions were followed by arguments from the prosecution and from defense counsel. No additional evidence was presented by the parties. After the arguments from the attorneys, the trial court excused the jury for lunch, which was followed by the jury's deliberations. The jury deliberated for approximately one and one-half hours before recommending, by a vote of 10-2, that Loggins be sentenced to death.
Recently, in Frazier v. State, 758 So.2d 577 (Ala.Cr.App. 1999), andJames v. State, 723 So.2d 776 (Ala.Cr.App.), cert. denied, 723 So.2d 786
(Ala. 1998), this court found no plain error in the penalty phase of capital murder trials where the trial court charged the jury before the presentation of evidence and arguments of counsel. We have reviewed the pertinent facts in the present case and find them to be substantially similar to the circumstances in both Frazier and James. In Frazier andJames, as in the present case, the trial court accurately stated the principles of law and the responsibilities of the jury. In none of the three cases did defense counsel object to the trial court's instruction at any time during the penalty phase. Additionally, in the present case, as was the case in Frazier, no significant time intervened between the trial court's instructions to the jury and the jury's deliberations. Moreover, in the present case, there was a recess for lunch between the conclusion of counsel's arguments and the jury's deliberations, allowing jurors an interval "to recover from the purely emotional aspects of the lawyers' argument before beginning *Page 1090 
deliberations." See James v. State, 723 So.2d 786, 787 (Ala. 1998). Considering the similarity between Frazier, James, and the present case and applying the rationale set forth in Frazier and James, we conclude that the trial court did not commit plain error in this case by instructing the jury during the penalty phase before the arguments of counsel.
As we held in James and restated in Frazier:
 "While we do not find error in this particular case, we do not condone the practice of charging the jury, especially in a capital murder case, before the arguments of counsel, in either the guilt or sentencing phase of trial. We understand that preliminary instructions can often be helpful for jurors, and we commend the trial judge for taking the time to educate the jury about its duties and the basic principles of law it would apply in its deliberations. However helpful preliminary instructions may be, though, they cannot serve as a substitute for a complete jury charge, as the rule [Rule 21.1, Ala.R.Crim.P.] requires, after counsel have completed their arguments. A final jury charge gives the trial court the last opportunity to be heard. It focuses the jury on the law, the evidence, and its responsibilities, and also allows the jury a time to recover from the purely emotional aspects of counsel's arguments prior to its deliberations.
 "If a trial court believes the preliminary instructions should be given to assist the jury in understanding the legal process, Rule 21.1 requires the judge to also give comprehensive jury instructions after closing arguments, even at the cost of extensive repetition. See Blandburg v. State, 208 Ga. App. 752, 754, 434 S.E.2d 510, 512 (Ga.Ct.App. 1993). To disregard the mandatory requirements of Rule 21.1, Ala.R.Crim.P., is to straddle a fine line between harmless and reversible error."
James, 723 So.2d at 786.
Additionally, we adhere to our recognition in Frazier that
 "the Alabama Supreme Court, in denying the state's petition for certiorari review in James, expressed disapproval of the practice of a trial court's charging the jury in full before presentation of evidence and the arguments of counsel. See James v. State, 723 So.2d 786, 787 (Ala. 1998). However, the issue of whether it is plain error for a trial court to fully charge a jury prior to the presentation of evidence and arguments of counsel was not presented by the state's request for certiorari review; the Court's expression of disapproval was not necessary to the resolution of the issues raised on appeal. Accordingly, we consider the court's expression of disapproval to be dicta and not binding precedent."
Frazier, 758 So.2d at 609.
Accordingly, there is no plain error here. We find no plain error or defect in the proceedings, either in the guilt phase or in the sentencing phase of the trial.
We have also reviewed Loggins's sentence in accordance with §13A-5-51, Ala. Code 1975, which requires that, in addition to reviewing the case for any error involving Loggins's capital murder conviction, we shall also review the propriety of the death sentence. This review shall include our determination of the following: (1) whether any error adversely affecting Loggins's rights occurred in the sentence proceedings; (2) whether the trial court's findings concerning the aggravating and mitigating circumstances were supported by the evidence; and (3) whether death is the appropriate sentence in the case. Section13A-5-53(b) requires that, in determining whether death is the proper sentence, we determine: (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) whether an independent weighing by this court of the aggravating and mitigating circumstances indicates that death is the proper sentence; *Page 1091 
and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and Loggins.
After the jury convicted Loggins of the capital offenses charged in the indictment, a separate sentence hearing was held before the jury in accordance with §§ 13A-5-45 and -46, Ala. Code 1975. After hearing evidence concerning aggravating and mitigating circumstances; after being properly instructed by the trial court as to the applicable law; and after being correctly advised as to its function in reference to the finding of any aggravating and mitigating circumstances, the weighing of those circumstances, if appropriate, and its responsibility in reference to the return of an advisory verdict, the jury recommended that Loggins be sentenced to death by electrocution by a vote of 10-2.
Thereafter, the trial court held another hearing, in accordance with § 13A-5-47, Ala. Code 1975, to aid it in determining whether it would sentence Loggins to life imprisonment without parole or to death as recommended by the jury. The trial court ordered and received a written presentence investigation report, as required by § 13A-5-47(b). Upon conclusion of the hearing, the trial court entered specific written findings concerning each aggravating circumstance enumerated in §13A-5-49, Ala. Code 1975, each mitigating circumstance enumerated in § 13A-5-51, Ala. Code 1975, and any mitigating circumstance found to exist under § 13A-5-52, Ala. Code 1975, as well as written findings of fact summarizing the offense and Loggins's participation in the offense.
In its findings of fact, the trial court found the existence of two statutory aggravating circumstances: (1) that the murder was committed while Loggins was engaged in the commission of, or an attempt to commit, or flight after committing, a kidnapping, see § 13A-5-49(4), Ala. Code 1975; and (2) that the capital offense was especially heinous, atrocious, or cruel when compared to other capital offenses, see §13A-5-49(8), Ala. Code 1975. The trial court found the existence of two statutory mitigating circumstances: (1) that Loggins had no significant history of prior criminal activity, see § 13A-5-51(1), Ala. Code 1975; and (2) that Loggins was 17 years old at the time of the offense, see § 13A-5-51(7), Ala. Code 1975. The trial court also heard testimony regarding Loggins's character or record and any of the circumstances of the offense that Loggins offered as a basis for sentencing him to life imprisonment without parole instead of death, see § 13A-5-52, Ala. Code 1975. In this regard, the trial court found that no nonstatutory mitigating evidence existed in this case.
The trial court's sentencing order reflects that after considering all the evidence presented, the presentence report, and the advisory verdict of the jury and after weighing the aggravating circumstances against the statutory mitigating circumstances in the case, the trial court found that the aggravating circumstances outweighed the statutory mitigating circumstances. Accordingly, the trial court sentenced Loggins to death. The trial court's findings concerning the aggravating circumstances and the mitigating circumstances are supported by the evidence.
Loggins was convicted of the offense of murder committed during a kidnapping. This offense is defined by statute as a capital offense. See § 13A-5-40(2), Ala. Code 1975. We take judicial notice that similar crimes have been punished capitally throughout the state. See, e.g., Landv. State, 678 So.2d 201 (Ala.Cr.Ap. 1995), aff'd, 678 So.2d 224 (Ala.), cert. denied, 519 U.S. 933, 117 S.Ct. 308, 136 L.Ed.2d 176 (1996);Callahan v. State, 557 So.2d 1292 (Ala.Cr.App.), aff'd, 557 So.2d 1311
(Ala. 1989), cert. denied, 498 U.S. 881, 111 S.Ct. 216, 112 L.Ed.2d 176
(1990); Boyd v. State, 542 So.2d 1247 (Ala.Cr.App. 1988), aff'd,542 So.2d 1276 (Ala.), cert. denied, 493 U.S. 883, 110 S.Ct. 219,107 L.Ed.2d 172 (1989). *Page 1092 
After carefully reviewing the record of the guilt phase and the sentencing phase of Loggins's trial, we find no evidence that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. We conclude that the findings and conclusions of the trial court are amply supported by the evidence. We have independently weighed the aggravating circumstances against the statutory mitigating circumstances, and we concur in the trial court's judgment that the aggravating circumstances outweigh the mitigating circumstances, and that death is the appropriate sentence in this case. Considering Loggins and the crime he committed, we find that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases.
For the reasons stated above, Loggins's conviction for the murder of Vickie DeBlieux during a kidnapping and his sentence of death are affirmed.
Although Loggins does not present this specific claim on appeal and did not object in the trial court that he had been subjected to double jeopardy after the jury returned its verdicts and the trial court entered judgments of conviction on both offenses, we are obligated to take note of the fact that the trial court was without jurisdiction to adjudge Loggins guilty of both capital murder for the murder of Vickie Deblieux, as charged in Count I of the indictment, and the intentional murder of Vickie Deblieux as a lesser included offense of the capital murder charge in Count II of the indictment. The record establishes that these two offenses arose out of the same conduct and that Loggins's conviction for the intentional murder of Vickie Deblieux under Count II of the indictment constituted a conviction for the same murder of Vickie Deblieux for which Loggins was convicted under Count I of the indictment. Section § 13A-1-8(b), Ala. Code 1975, provides, in part, as follows:
 "When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
 "(1) One offense is included in the other, as defined in section § 13A-1-9. . . ."
Intentional murder, as defined in § 13A-6-2(a)(1), Ala. Code 1975, is an element of the capital offense of murder committed during a kidnapping, as defined in § 13A-5-40(a)(1), Ala. Code 1975, and this element must be proven to support a conviction of the capital offense. See Ala. Code 1975, § 13A-1-9(a)(1) ("[a]n offense is an included one if . . . [i]t is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged"). Thus, Loggins's right not be placed in jeopardy twice for the same offense was violated when he was convicted of both the lesser included offense of intentional murder under Count II, which alleged the capital offense of murder committed during a robbery, and of the capital offense of murder during a kidnapping under Count I. See Mangione v. State,740 So.2d 444 (Ala.Cr.App. 1998); Borden v. State, 711 So.2d 498, 503
(Ala.Cr.App. 1997), aff'd, 711 So.2d 506 (Ala.), cert. denied,525 U.S. 845, 119 S.Ct. 113, 142 L.Ed.2d 91 (1998); and Coral v. State,628 So.2d 954, 958 (Ala.Cr.App. 1992), aff'd, 628 So.2d 1004 (Ala. 1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61
(1994).
"The double jeopardy transgression in this case implicates the trial court's jurisdiction to render a judgment. . . . Where the jury returns guilty verdicts for both a capital offense alleged in one count of the indictment and the lesser included offense of intentional murder of a capital offense alleged in another count of the indictment, and the same murder was an element of the capital offense and the intentional murder conviction, the trial court should enter a judgment on only one of the offenses." Borden, 711 So.2d at 503. Accordingly, this cause is due to be remanded with *Page 1093 
directions for the trial court to vacate Loggins's conviction for intentional murder as a lesser included offense of the capital offense of murder during a robbery, as charged in Count II of the indictment. However, Loggins's conviction under Count I of the indictment for the capital offense of murder during a kidnapping and the resulting death sentence are affirmed.
 AFFIRMED AS TO THE CONVICTION AND THE SENTENCE IMPOSED UNDER COUNT I OF INDICTMENT; REVERSED AS TO THE CONVICTION AND THE SENTENCE IMPOSED UNDER COUNT II; AND REMANDED WITH DIRECTIONS.
McMillan, Cobb, Baschab, and Fry, JJ., concur.
[1] Since Loggins's trial, Rule 19.3(a) has been amended, effective December 1, 1997, to conform to § 12-16-9.
[2] Testimony indicated that the police were able to apprehend Loggins and his accomplices because an accomplice, when bragging to a group of friends, displayed one of Deblieux's fingers.